[No. B101716. Second Dist., Div. Four. July 9, 1998.]

MARLEE M. BEYDA, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

514

## COUNSEL

Hadsell & Stormer, Dan Stormer, Sandra C. Muñoz and Anne Richardson for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, Molly Roff-Sheridan, Deputy City Attorney, Christensen, Miller, Fink,

Jacobs, Glaser, Weil & Shapiro, Louis R. Miller, Sean Riley and David N. Lake for Defendants and Respondents.

## OPINION

**EPSTEIN, Acting P. J.**—Marlee M. Beyda appeals from a defense judgment in her sexual harassment case against Los Angeles City Councilperson Nate Holden, members of his staff, and the City of Los Angeles. Her sole claim of error is that the court erroneously excluded evidence of acts of sexual harassment of other employees by Mr. Holden and one of his staff members. We conclude that while evidence of this sort may be relevant to the determination of a hostile work environment, in this case the plaintiff did not present, or offer to present, the necessary foundational facts to permit its admission.

### FACTUAL AND PROCEDURAL SUMMARY

Mr. Holden met Ms. Beyda while she was working as a waitress. The two chatted about the possibility of Mr. Holden helping Ms. Beyda obtain employment with the city, and he gave her his business card. Ms. Beyda called about a possible job opening, was interviewed, and began work as a council aide in Mr. Holden's district office on Pico Boulevard in April 1991. While Ms. Beyda's work was at the district office, on occasion she would go to Mr. Holden's downtown office on business. She also went to Mr. Holden's apartment in Marina Del Rey several times.

Ms. Beyda resigned in September 1992, and promptly filed a claim with the Department of Fair Employment and Housing, alleging sexual harassment and discrimination by Mr. Holden, Field Deputies Cruz Nunez and Ira Massey, and Chief of Staff Louis White. After receiving a right to sue letter from the department, Ms. Beyda brought this action against the City of Los Angeles, Mr. Holden, Mr. Nunez, Mr. Massey, Mr. White, and others. The first amended complaint, the charging pleading, alleged causes of action for violations of Government Code section 12940, including sexual harassment; sex discrimination; unlawful retaliation; constructive discharge; assault; battery; and invasion of privacy. Among other things, Ms. Beyda alleged that Mr. Holden engaged in several acts of unwanted sexual conduct with her, and that he and the others made offensive explicit sexual remarks in her presence.

The matter went to trial in October 1995. Defendants brought a motion *in limine* to exclude evidence that other women had been sexually harassed by

Mr. Holden and the other defendants. The court granted the motion, ruling that such evidence would only be admissible to establish a hostile environment if Ms. Beyda was present at the time the incidents occurred. The case was tried to the court. After a six-week trial, the court found in favor of defendants on all issues. Ms. Beyda appeals from the judgment entered against her.

### DISCUSSION

 On appeal, Ms. Beyda does not challenge the sufficiency of evidence to support the trial court's credibility or factual determinations. She challenges only the exclusion of evidence of acts of sexual harassment directed toward other women in her workplace.

 "Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion." (*People* v. *Alvarez* (1996) 14 Cal.4th 155, 201 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Even where evidence has been erroneously excluded, the judgment or decision shall not be reversed unless the reviewing court is of the opinion that the error resulted in a miscarriage of justice. (Evid. Code, § 354; Cal. Const., art. VI, § 13.) In this case we find neither an abuse of discretion nor prejudice.

### I

The court excluded the proffered evidence in this case on the ground that acts of harassment directed at other women outside of appellant's presence were not relevant to prove that appellant was sexually harassed. In order to determine the propriety of the court's exclusion of evidence, we begin with an overview of the applicable law governing claims for sexual harassment.

 The Fair Employment and Housing Act (FEHA) "prohibits a variety of unfair labor practices including discrimination 'in terms, conditions or privileges of employment' on the basis of sex. ([Gov. Code,] § 12940, subd. (a).)" (*Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 605 [262 Cal.Rptr. 842].) Government Code section 12940, subdivision (h)(1) makes it unlawful for an employer, because of "sex, to harass an employee or applicant." There are two recognized categories of sexual harassment claims. The first is quid pro quo harassment, where a term of employment or employment itself is conditioned upon submission to unwelcome sexual advances. (*Mogilefsky* v. *Superior Court* (1993) 20 Cal.App.4th 1409, 1414 [26 Cal.Rptr.2d 116].) The second, and the one at issue in this case, is hostile work environment, "where the harassment is sufficiently

pervasive so as to alter the conditions of employment and create an abusive work environment." (*Ibid.*)

Sexual harassment is also prohibited by title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). ■ Although the wording of title VII differs in some particulars from the wording of FEHA, the antidiscriminatory objectives and overriding public policy purposes of the two acts are identical. (*County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381].) "[I]n an area of emerging law, such as employment discrimination, it is appropriate to consider federal cases interpreting title VII." (*Mogilefsky* v. *Superior Court, supra*, 20 Cal.App.4th at p. 1416, fn. 5.)

■ The Supreme Court has described a hostile work environment in the context of sexual harassment as a workplace "permeated with 'discriminatory intimidation, ridicule and insult,' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' . . ." (*Harris* v. *Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 [114 S.Ct. 367, 370, 126 L.Ed.2d 295].) " 'Sexual harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives its victim of her statutory right to work in a place free of discrimination, when the sexually harassing conduct sufficiently offends, humiliates, distresses or intrudes upon its victim, so as to disrupt her emotional tranquillity in the workplace, affect her ability to perform her job as usual, or otherwise interferes with and undermines her personal sense of well-being.' [Citation.]" (*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 608.)

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (*Harris* v. *Forklift Systems, Inc., supra,* 510 U.S. at p. 23 [114 S.Ct. at p. 371].) "The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended. [Citation.]" (*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at pp. 609-610, fn. omitted.)

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " (*Oncale* v. *Sundowner Offshore Services, Inc.* (1998) __

U.S. __ [118 S.Ct. 998, 1003, 140 L.Ed.2d 201].) "[T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." (*Ibid.*)

## II

We deal briefly with the question of what constitutes "workplace." Appellant's primary work site was Mr. Holden's Pico Boulevard district office. Appellant also spent time on work-related business at the downtown office. Mr. Holden spent time at both locations. We do not define "workplace" so narrowly that evidence of harassment is excluded simply because it occurred at Mr. Holden's downtown office rather than at his district office.

## III

This brings us to the core issue in the case—whether evidence of harassment of persons other than the plaintiff is relevant to establish the existence of a hostile workplace. Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

In examining relevancy, we first reject the use of the proffered evidence of other acts of harassment by respondents to prove that they engaged in similar conduct against appellant. When offered on the theory that respondents are likely to have committed the conduct at issue simply because they did the same thing before, the evidence goes to propensity, and is inadmissible under Evidence Code section 1101, subdivision (a). "[T]he rationale for excluding such evidence is not that it lacks probative value, but that it is too relevant. 'It may almost be said that it is because of the indubitable relevancy of specific bad acts showing the character of the accused that such evidence is excluded. It is objectionable not because it has no appreciable probative value but because it has too much.' (1A Wigmore on Evidence (Tillers rev. 1983) § 58.2, p. 1212.)" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179 [63 Cal.Rptr.2d 753].) But, as we shall explain, the evidence in this case is relevant for another, permissible purpose.

As the Supreme Court recently reiterated, in order to be actionable, ". . . a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or

abusive, and one that the victim in fact did perceive to be so." (*Faragher* v. *City of Boca Raton* (1998) __ U.S. __ [118 S.Ct. 2275, 2283, 141 L.Ed.2d 662].) The work environment must be viewed from the perspective of a reasonable person in the plaintiff's position, considering " 'all the circumstances.' " (*Oncale* v. *Sundowner Offshore Services, Inc., supra*, __ U.S. __, __ [118 S.Ct. 998, 1003].) This determination requires judges and juries to exercise "[c]ommon sense, and an appropriate sensitivity to social context" in order to evaluate whether a reasonable person in the plaintiff's position would find the conduct severely hostile or abusive. (*Ibid.*)

■ Appellant alleged that she was the victim of sexually harassing conduct directed toward her by Mr. Holden and others. She sought to introduce the acts suffered by other employees as further evidence of the hostile environment. ■ Are incidents of sexual harassment directed toward other employees in the work environment relevant to that evaluation? Yes.

The Supreme Court of New Jersey explained the point in *Lehmann* v. *Toys 'R' Us, Inc.* (1993) 132 N.J. 587 [626 A.2d 445, 457]: "The plaintiff's work environment is affected not only by conduct directed at herself but also by the treatment of others. A woman's perception that her work environment is hostile to women will obviously be reinforced if she witnesses the harassment of other female workers." (See also *Vinson* v. *Taylor* (D.C. Cir. 1985) 753 F.2d 141, 146 [243 App.D.C. 323].) We agree. We also believe that a reasonable person may be affected by knowledge that other workers are being sexually harassed in the workplace, even if he or she does not personally witness that conduct.

If, however, the plaintiff neither witnesses the other incidents nor knows that they occurred, those incidents cannot affect his or her perception of the hostility of the work environment. The objective severity of harassment must be judged from the perspective of a reasonable person in the plaintiff's position. (*Oncale* v. *Sundowner Offshore Services, Inc., supra*, __ U.S. __, __ [118 S.Ct. 998, 1003].) A reasonable person would not perceive a work environment to be objectively hostile or abusive based on conduct toward others of which she is unaware.

Our conclusion is consistent with the holding in *Fisher* v. *San Pedro Peninsula Hospital, supra*, 214 Cal.App.3d 590, a precedent relied upon by both parties. The appeal in *Fisher* followed the sustaining of a demurrer without leave to amend. The charging pleading alleged that a hospital physician created a hostile environment for the plaintiff, a surgical nurse, by his sexual harassment of other women employees in her presence. The court found the allegations insufficient to state a cause of action for environmental

sexual harassment because none of the acts was directed at the plaintiff. "Ms. Fisher could not have suffered from working in a hostile environment unless she was personally exposed to it. It is not sufficient to plead that a pattern of sexual harassment existed at [the hospital]. Ms. Fisher, being percipient, should have been able, and was properly required by the law and motion judge, to allege sufficient facts to establish that *her work environment was permeated by sexual harassment.*" (*Id.* at p. 613, italics in original.)

What *Fisher* requires is that a nexus be established between the allegedly hostile environment and the plaintiff's experience in the workplace. That is what we are requiring as well. Harassment against others in the workplace is only relevant to the plaintiff's case if she has personal knowledge of it. Unless plaintiff witnesses the conduct against others, or is otherwise aware of it, that conduct cannot alter the conditions of her employment and create an abusive working environment. Stated another way, a reasonable person in plaintiff's position would not find the environment hostile or abusive unless that person had knowledge of the objectionable conduct toward others.

The *Fisher* court said: " 'Evidence of the general work atmosphere, involving employees other than the plaintiff, is relevant to the issue of whether there existed an atmosphere of hostile work environment. . . .' [Citation.] Therefore, one who is personally subjected to offensive remarks and touchings can establish a hostile work environment by showing that harassment existed in the place of employment. However, one who is not personally subjected to such remarks or touchings must establish that she personally witnessed the harassing conduct and that it was in her immediate work environment." (214 Cal.App.3d at pp. 610-611.)

Respondents argue, and the trial court agreed, that under *Fisher*, in order for evidence of harassing conduct to other employees to be relevant, the plaintiff must establish that she personally witnessed that conduct in her immediate work environment. Appellant argues that *Fisher* only required personal observation in cases where the plaintiff was not a "direct victim" who had been personally subjected to the offensive remarks and touchings. Since appellant's theory was that she was a direct victim of the harassing conduct, she claims the court erred in requiring that she actually witness harassing conduct to others in order for that conduct to be relevant to show a hostile environment.

We do not read *Fisher* as narrowly as do respondents. As we read the case, the court was not purporting to limit the admissibility of evidence of conduct toward other victims in all instances; it was addressing only the situation

where the plaintiff herself was not a direct victim. That is not our case. To the degree that *Fisher* may be understood to require that a plaintiff personally witness any act relied upon to prove hostile environment, we respectfully disagree.

As we have explained, personal observation is not the only way that a person can perceive, and be affected by, harassing conduct in the workplace. One can also be affected by knowledge of that harassment. In reaching this conclusion, we caution that mere workplace gossip is not a substitute for proof. Evidence of harassment of others, and of a plaintiff's awareness of that harassment, is subject to the limitations of the hearsay rule. It is not a substitute for direct testimony by the victims of those acts, or by witnesses to those acts.

In this case, none of the specific acts excluded by the trial court occurred in appellant's presence, nor was there any indication in the offer of proof that she knew of them during her employment in Mr. Holden's office. Because of this, the trial court did not abuse its discretion in excluding this evidence.

Appellant argues it is unfair for this court to rely on her failure to establish that she had knowledge of the harassment of others since the trial court did not decide the question on that basis, and hence she had no reason to make that showing. Appellant cannot sincerely claim she is surprised that knowledge is a basis for finding the evidence relevant and admissible; that was the position she took in opposition to respondents' motion *in limine* to exclude evidence of acts against others. Nevertheless, she failed to make the showing necessary to satisfy that standard in her offers of proof or at any time during trial. We find no unfairness in holding her to the standard she asserted.

We also find no prejudice from the exclusion of this evidence. Its admission would have been relevant to establish the pervasiveness of sexual harassment in appellant's workplace. But that was not the element on which appellant's case faltered. Appellant presented ample testimony of separate incidents involving herself and others which, if credited, would constitute the critical mass necessary for a pervasive atmosphere of harassment. In ruling in favor of respondents, the trial court found that appellant's testimony and the testimony of her witnesses was less convincing and credible than the testimony of respondents and their witnesses.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Czuleger, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.