[No. D048281. Fourth Dist., Div. One. June 14, 2007.]

KIM C. JONES, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,
Defendants and Respondents.

## COUNSEL

Donald R. Holben & Associates and Leah Marie Peer for Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Chris A. Knudsen and Theodore S. Drcar, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**O'ROURKE, J.**—Kim C. Jones appeals a summary judgment granted to her employer, the California Department of Correction and Rehabilitation (CDCR), and individual supervisors, Sergeants James Bolin and Gary Kuske, crew officer Michael McMinn, and Robert Hernandez, the warden at the R.J. Donovan Correctional Facility (collectively, Respondents).[1] Jones contends the trial court erred in finding she did not present evidence of triable issues of material fact showing: (1) Respondents' conduct constituted adverse employment actions; (2) a nexus existed between her gender and race and the adverse actions; (3) she was subjected to a severe and pervasive hostile work environment based upon her gender; Jones also contends (4) as a matter of law, her causes of action for assault and battery, emotional distress, and negligent supervision were not barred by the exclusive remedies of the workers' compensation statutes.

We conclude Respondents met their burden on summary judgment and Jones failed to establish the existence of triable issues of material fact which could lead a reasonable trier of fact to find that she experienced harassment, discrimination and retaliation within the meaning of California's Fair Employment and Housing Act (FEHA) (Gov. Code,[2] § 12900 et seq.). We conclude the causes of action for assault and battery and emotional distress are barred by the workers' compensation exclusivity rule. The negligent

---

[1] The complaint named as defendant R.J. Donovan Correctional Facility (Donovan), where Jones worked. CDCR filed an answer on behalf of itself and the individually named defendants, and generally denied Jones's allegations.

[2] All citations are to the Government Code unless otherwise stated.

supervision cause of action also fails because it was based on Jones's claims of discrimination and assault and battery. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We set forth the undisputed facts from the parties' documents supporting their moving and opposing papers (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 327 [100 Cal.Rptr.2d 352, 8 P.3d 1089]) (*Guz*) and state other facts and draw inferences from them in the light most favorable to Jones as the opposing party. (Code Civ. Proc., § 437c, subd. (c); *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1520 [80 Cal.Rptr.2d 94]; *Van Dyke v. S.K.I. Ltd.* (1998) 67 Cal.App.4th 1310, 1313, fn. 2 [79 Cal.Rptr.2d 775].) We do so notwithstanding Jones's failure to set out a complete and adequate factual recitation in her opening brief, as discussed below.

Jones, an African-American female, has worked as a correctional officer at Donovan since 1987. She became a rock crew officer in December 2002, and supervised inmates on a work crew.[3] Her lawsuit alleged the following causes of action arising under FEHA: (1) gender discrimination—hostile work environment; (2) sexual harassment—hostile work environment; (3) race discrimination; and (4) unlawful retaliation. She also alleged: (5) assault and battery; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) negligent supervision and retention of employees.

The complaint alleged, "beginning in December 2002 until December 4, 2003, Jones was treated with open hostility, disrespect and cruelty by the male correctional officers." Jones reported these incidents to her supervisors. From January 2003 until October 2003, Jones's supervisor was Sergeant Doris Turner, an African-American.

In April 2003, Jones was not permitted to change her work schedule, although two male correctional officers, Newton and McMinn, were allowed to change theirs. After Jones inquired about this disparate treatment, Sergeant Turner notified McMinn that the practice of making such schedule changes was cancelled. As a result, McMinn and other male correctional officers "escalated their abusive and hostile behavior towards [her]."

On May 2, 2003, Captain Talbert met with Jones and gave her a "Job Expectations" memorandum that primarily summarized California Code of

---

[3] At Donovan, rock crew officers are correctional officers assigned to supervise 15 or more inmates who perform manual labor, such as weed abatement, outside Donovan's perimeter.

Regulations sections dealing with "Employee Conduct" and the "Rights and Respect of Others." Shortly afterwards, Captain Talbert met with McMinn and issued him a similar memorandum.

From approximately October 2003 through December 4, 2003, Sergeant Gary Kuske directly supervised Jones. On or about November 20, 2003, Sergeant Kuske forbade Jones and all other crew officers from doing paperwork in his office. Jones claims Kuske "directed her to the Connex outside the facility where the tools were kept."

On December 4, 2003, Jones and McMinn had an altercation regarding the use of a wheelbarrow. Jones testified in her deposition that the inmates she was supervising needed the wheelbarrow, but McMinn took it. Jones was displeased and went to retake it; however, McMinn blocked her and refused to move out of her way. He grabbed her arm and started "banging her body around and stuff." Just then, another correctional officer called out to McMinn that the sergeant wanted to see him. McMinn walked away, and Jones took the wheelbarrow. That day Jones reported pain in her neck and right wrist and shoulder, for which she received medical care at Donovan. Carol Capper, the treating medical technical assistant, stated in a declaration, "My examination indicated Officer Jones' right wrist had a full range of motion. Her skin was intact meaning she had no wounds or cuts and there was no redness." Jones was placed on medical disability leave on December 4, 2003, and has not returned to work. She has collected workers' compensation benefits.

In January and September, 2004, Jones filed complaints with the Department of Fair Employment and Housing (DFEH) against Donovan and several employees. In February and September, 2004, the DFEH issued right-to-sue notices, and she filed the underlying complaint on October 29, 2004.

On September 30, 2005, CDCR filed a motion for summary judgment or, in the alternative, summary adjudication on behalf of itself and all defendants, arguing that the FEHA causes of action failed—as a matter of law—because Jones could not state a prima facie case, given that none of the claimed wrongful conduct constituted an adverse action; but even if they were so deemed, they were made for legitimate, nondiscriminatory reasons. Respondents also contended the exclusive remedy provided in the workers' compensation statutes barred the causes of action for assault and battery, intentional and negligent infliction of emotional distress, and negligent supervision and retention of employees.

Jones opposed the motion and listed a "series of adverse employment actions against [her]." Specifically, her male coworkers inflicted hardship on her in the following nine ways: criticized her without reason; treated her in a hostile manner on a daily basis; did not respond to her calls for assistance; made false accusations about her to inmates, including misleading the inmates into believing she was responsible for a failure to timely pay the inmates; intentionally misled her into believing she and her inmates were responsible for working expanded areas; and treated her inmates disparately and more harshly than their own crews. She was given an expectations memo on the same day she inquired why McMinn and Newton were allowed to change their work schedules; McMinn responded by accusing her of creating a hostile work environment. Sergeant Kuske ordered her out of his office, and directed her to work in the Connex, which was infested with rodents/rats, because the male officers did not welcome her presence in the more desirable areas. Finally, CDCR investigated her for misconduct following the wheelbarrow incident.

Respondents pointed out in their reply papers that Jones's opposition presented no evidence that her race or gender was the basis for her claims of adverse action, discrimination, sexual harassment and retaliation. Moreover, Jones did not present any evidence to refute Respondents' claims their complained-of employment actions were made for legitimate, nondiscriminatory reasons. In particular, Jones and McMinn each received a memorandum of expectations in accordance with CDCR policy to improve employee conduct and working relationships; Kuske banned all crew officers from his office because he did not want them spending time away from their supervisory duties; and, Jones was assigned to work in the Connex because she was to inventory tools there. Jones did not dispute that the rats and rodents are native to the desert area around Donovan, and make their home under the Connex.

The trial court granted summary judgment in favor of all defendants.

## DISCUSSION

### Summary Judgment

"The grant and denial of summary judgment or summary adjudication motions are subject to de novo review." (*Nakamura v. Superior Court* (2002) 83 Cal.App.4th 825, 832 [100 Cal.Rptr.2d 97].) "[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' [the defendant] 'has shown that one or more elements

of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493]; see Code Civ. Proc., § 437c, subd. (*o*)(2).) We must presume the judgment is correct, and the appellant bears the burden of demonstrating error. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443 [41 Cal.Rptr.2d 362, 895 P.2d 469].)

"Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (Code Civ. Proc., § 437c, subd. (b)(3); e.g., *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27], citing 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 589, p. 624 ["It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal"]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] [scope of review on appeal is limited to those issues adequately raised and supported in opening brief, even where review is de novo]; *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401] [summary judgment affirmed where appellant's brief did not include exact page citations to the record; problem is "especially acute" when considering an appeal from a summary judgment].)

### *Sexual Harassment*

FEHA prohibits a variety of unfair labor practices, including discrimination, "in terms, conditions, or privileges of employment" on the basis of specified characteristics. (§ 12940, subd. (a); see *Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 516 [76 Cal.Rptr.2d 547].) Specifically, it is an unlawful employment practice for an employer to harass an employee based on his or her sex. (§ 12940, subd. (j)(1).) The statutory scheme requires an employer to take all reasonable steps to prevent harassment from occurring in the workplace and to take immediate and appropriate action when it is or should be aware that harassment has occurred. (*Ibid.*; *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1139 [90 Cal.Rptr.2d 804, 988 P.2d 1083], superseded by statute on other grounds as noted in *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 928, fn. 7 [10 Cal.Rptr.3d

852].) An employer is strictly liable for harassment committed by its agents or supervisors, but is liable for harassment committed by its other employees only if it fails to take immediate and appropriate corrective action when reasonably made aware of the situation. (*Carrisales*, at pp. 1134–1140.)

■ Claims of a hostile or abusive working environment due to sexual harassment arise when a workplace is "permeated with 'discriminatory intimidation, ridicule, and insult . . .' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' . . . ." (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 [126 L.Ed.2d 295, 114 S.Ct. 367]; see also *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 67 [91 L.Ed.2d 49, 106 S.Ct. 2399]; *Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 160 [134 Cal.Rptr.2d 492]; *Beyda, supra*, 65 Cal.App.4th at pp. 516–517; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608 [262 Cal.Rptr. 842] (*Fisher*).) The elements of such a cause of action are: "(1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior." (*Fisher, supra*, at p. 608.)

The court in *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130 [87 Cal.Rptr.2d 132, 980 P.2d 846], citing decisions applying title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (Title VII), observed that not all workplace conduct that may be characterized as harassing affects a term, condition or privilege of employment within the meaning of Title VII. Instead, the conduct must be both objectively and subjectively offensive: " 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.' " (*Aguilar v. Avis Rent A Car System, Inc., supra*, 21 Cal.4th at p. 130.) The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive is a crucial limitation that prevents sexual harassment law from being expanded into a "general civility code." (*Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 81 [140 L.Ed.2d 201, 118 S.Ct. 998].) The conduct must be extreme: " 'simple teasing,' [citation] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " (*Faragher v. Boca Raton* (1998) 524 U.S. 775, 788 [141 L.Ed.2d 662, 118 S.Ct. 2275].) The harassment cannot be occasional, isolated, sporadic, or trivial; the plaintiff must show a " 'concerted

pattern of harassment of a repeated, routine or a generalized nature.' " (*Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal.4th at p. 131.)

■ Thus, for example, " 'mere utterance of an . . . epithet which engenders offensive feelings in a employee,' [citation] does not sufficiently affect the conditions of employment to implicate Title VII." (*Harris v. Forklift Systems, Inc., supra*, 510 U.S. at p. 21.) Rather, " '[s]exual harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives its victim of her statutory right to work in a place free of discrimination, when the sexually harassing conduct sufficiently offends, humiliates, distresses or intrudes upon its victim, so as to disrupt her emotional tranquility in the workplace, affect her ability to perform her job as usual, or otherwise interferes with and undermines her personal sense of well-being.' " (*Fisher, supra*, 214 Cal.App.3d at p. 608.)

■ Whether an environment is hostile or abusive can be determined only by looking at all the circumstances. (*Harris v. Forklift Systems, Inc., supra*, 510 U.S. at p. 23; *Faragher v. City of Boca Raton, supra*, 524 U.S. at p. 788.) "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." (*Harris v. Forklift Systems, Inc.*, at p. 23; see *Fisher, supra*, 214 Cal.App.3d at p. 610 [including in the totality of circumstances to be considered the nature of the threatening acts (in that physical touching is more offensive than unwelcome verbal abuse); the total number of days over which all of the offensive conduct occurs; and the context in which the sexually harassing conduct occurred]; *Sheffield v. Los Angeles County Dept. of Social Services, supra*, 109 Cal.App.4th at p. 162.)

■ We conclude, based on the totality of the circumstances, Jones failed to present a triable issue of material fact from which it reasonably could be inferred she suffered harassment proscribed by FEHA. Specifically, Respondents, in their moving papers, pointed to Jones's deposition testimony in which several times she was asked whether the comments and complaints her coworkers made about her were prompted by her gender or race. Jones repeatedly answered, "No" and "I don't know." The absence of the nexus between the alleged harassment and Jones's gender negates her FEHA claim.

Jones's claim also fails for the independent reason that she did not produce evidence that the conditions she complained of were sufficiently severe or

pervasive to constitute harassment. As the trial court concluded regarding all Jones's complaints about adverse employment action, "These incidents are akin to being a collection of isolated and objectively non-discriminatory events." We regard the wheelbarrow incident as the most severe conduct she complained about because it involved physical conduct; however, it was a one-time occurrence, which was unrelated to her gender. Several of her other complaints similarly were either regarding discrete incidents or matters that were not severe; illustrative examples are the dispute with the inmates regarding their pay; the expectations memorandum she received; and McMinn's response to the memorandum he received. There is no evidence the male coworkers' "daily criticisms" were severe because, as recounted in Jones's deposition testimony, they amounted to no more than comments that she was "not doing her job."

### Discrimination

■ It is unlawful employment practice for an employer "to discharge [a] person from employment or . . . to discriminate against [that] person in compensation or in terms, conditions, or privileges of employment" based on that person's race or national origin. (§ 12940, subd. (a).) In general, there are two types of illegal employment discrimination under FEHA: disparate treatment and disparate impact. (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128–129 [33 Cal.Rptr.3d 287].) Jones's claim is based on a disparate treatment theory, which requires a showing that the employer acted with discriminatory intent. (*Ibid.*)

To succeed on a disparate treatment claim at trial, the plaintiff has the initial burden of establishing a prima facie case of discrimination, to wit, a set of circumstances that, if unexplained, permit an inference that it is more likely than not the employer intentionally treated the employee less favorably than others on prohibited grounds. (*Guz, supra,* 24 Cal.4th 317, at pp. 354–355.) Based on the inherent difficulties of showing intentional discrimination, courts have generally adopted a multifactor test to determine if a plaintiff was subject to disparate treatment. The plaintiff must generally show that: he or she was a member of a protected class; was qualified for the position he sought; suffered an adverse employment action, and there were circumstances suggesting that the employer acted with a discriminatory motive. (*Ibid.*, adopting the test applicable to federal discrimination claims in accordance with *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817].)

■ On a defense motion for summary judgment against a disparate treatment claim, the defendant must show either that one of these elements cannot be established or that there were one or more legitimate, nondiscriminatory reasons underlying the adverse employment action. (*Guz, supra,* 24

Cal.4th at p. 356; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098 [38 Cal.Rptr.3d 240].) Here, as we have noted, there is no nexus shown between the coworkers' conduct and Jones's gender or race; therefore, she cannot make out a claim for discrimination. Jones likewise failed to produce evidence rebutting Respondents' proffered reasons for certain employment decisions or make a showing they were merely pretexts for discriminatory conduct. Based on the above, any slights or offenses Jones complains about did not rise to the level of discrimination.

### Retaliation

■ Under California case law, "to establish a prima facie case of retaliation under the FEHA,[4] a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (*Yanowitz*).)

■ Critical to an inquiry regarding a retaliation claim arising under FEHA is whether the plaintiff suffered an "adverse employment action." The cases applying Government Code section 12940, subdivision (a) describe its discrimination component as requiring an "adverse employment action," to wit, a "substantial adverse change in the terms and conditions of the plaintiff's employment." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1454, 1455 [116 Cal.Rptr.2d 602].) For the purpose of applying the statute, an adverse employment action is not limited to "ultimate" employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career advancement. (*Yanowitz, supra*, 36 Cal.4th at pp. 1053–1054 [noting that the statutory definition is interpreted broadly to further FEHA's fundamental antidiscrimination purposes]; see *Akers, supra*, at p. 1441.)

---

[4] Subdivision (h) of section 12940 addresses prohibited retaliation arising under FEHA, and provides that it is an unlawful employment practice for an "employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

An isolated incident, such as a delay in the delivery of a single paycheck, a failure to receive an overtime check or an early job change, does not constitute an adverse employment action. (*Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 511–512 [91 Cal.Rptr.2d 770].) Further, "a mere offensive utterance or . . . a pattern of social slights by either the employer or coemployees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment for purposes of section 12940[, subdivision] (a)." (*Yanowitz, supra,* 36 Cal.4th at p. 1054.) However, a series of alleged discriminatory acts must be considered collectively rather than individually in determining whether the overall employment action is adverse (*id.* at p. 1055; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 373–374 [33 Cal.Rptr.3d 644]) and, in the end, the determination of whether there was an adverse employment action is made on a case-by-case basis, in light of the objective evidence. (*Thomas v. Department of Corrections, supra,* at p. 510.)

Here, Respondents demonstrated that Jones failed to provide any evidence disputing Respondents' claim she suffered no adverse change in the terms and conditions of her employment. Specifically, she never experienced a loss or reduction in her classification, position, salary, benefits and work hours; and her employment was not terminated. She failed to make out a claim she was constructively discharged because no evidence shows her employer intentionally created or knowingly permitted working conditions so intolerable or aggravated that a reasonable employee in her position would have felt compelled to resign. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022].)

Jones merely listed, but did not separately discuss, the nine instances of claimed adverse employment action; rather, she alleged that these actions, collectively, formed a pattern of conduct that adversely changed the terms and conditions of her employment. Respondents correctly point out Jones's briefing is deficient because it relies on block citations to her deposition testimony. "As a general rule, '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' " (*Guthrey v. State of California, supra,* 63 Cal.App.4th at p. 1115.)

In any event, we point out that, "As a threshold matter, we need not and do not decide whether each alleged . . . act constitutes an adverse employment action in and of itself." (*Yanowitz, supra,* 36 Cal.4th at p. 1055.) Jones's allegations are not supported by specific facts showing that a triable issue of material fact exists as to these causes of action. For example, one of Respondents' statements of material undisputed facts was: "Her classification and position remained the same as did her salary and benefits. Her work

hours and days worked remained the same." Jones responded, "Disputed. Plaintiff's working conditions were different than the male rock crew officers. Now her inability to return to work because her male co-workers' conduct went unchecked resulted in McMinn ultimately assaulting her which has deprived her of the ability to work to the present." The proffered evidence supported Respondents' assertion and not Jones's rebuttal, which we also note was not responsive to Respondents' exact statement of material undisputed fact. In short, there is no evidence, and it is not reasonable to infer, that Jones's work conditions were materially altered. Accordingly, her claim of retaliation, like the other causes of action arising under FEHA, cannot be sustained.

### Emotional Distress

Jones opposed summary judgment regarding the causes of action for intentional and negligent emotional distress by contending, "[T]he legislature did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of *discriminatory* practices. Thus a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal *discriminatory* practices. . . . [¶] Here, Defendant's [*sic*] actions constitute *discrimination* in violation of a fundamental public policy of this state. Such misconduct lies outside of the exclusive remedy provisions of the Labor Code."

Because we conclude Jones did not establish discrimination her causes of action for emotional distress fail to the extent they are tethered to the discrimination claim. Further, independent basis for disposing of these causes of action for emotional distress is that they are barred by the exclusivity rule of workers' compensation. Even if the discriminatory conduct Jones complained about "may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25 [276 Cal.Rptr. 303, 801 P.2d 1054].) "So long as the basic conditions of compensation are otherwise satisfied [citation], and the employer's conduct neither contravenes fundamental public policy [citation] nor exceeds the risks inherent in the employment relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754 [7 Cal.Rptr.2d 808, 828 P.2d 1195].)

*Assault and Battery*

Based on the wheelbarrow incident, Jones alleged against McMinn alone a cause of action for assault and battery. Respondents asserted in their separate statement of undisputed material facts that, "The motion addresses this issue as a matter of law and is [*sic*] not based upon any undisputed material facts." Specifically, they contended the causes of action were barred by the workers' compensation exclusivity rule.

■ "Labor Code section 3600, subdivision (a), provides that, subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.' " (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708 [30 Cal.Rptr.2d 18, 872 P.2d 559], fn. omitted.)

■ "As a general rule, an employee who sustains an industrial injury 'arising out of and in the course of the employment' is limited to recovery under the workers' compensation system. [Citations.] We have observed that this rule of exclusivity is based on the ' "presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." ' [Citation.] [¶] To prevent employees from circumventing the exclusivity rule by bringing lawsuits for work-related injuries against coemployees, who in turn would seek indemnity from their employers, the Legislature in 1959 provided immunity to coemployees. [Citation.] . . . For conduct committed within the scope of employment, employees, like their employers, should not be held subject to suit. [Citations.] [¶] There are, however, statutory exceptions to coemployee immunity. As relevant here, a civil suit is permissible when an employee proximately causes another employee's injury or death by a 'willful and unprovoked physical act of aggression' [citation] . . . . [Citation.] If an employee brings a lawsuit against a coemployee based on either of these exceptions, the employer is not 'held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee . . . .' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1001–1002 [111 Cal.Rptr.2d 564, 30 P.3d 57], fn. omitted (*Torres*).) The term "aggression" suggests intentional harmful conduct. (*Id.* at p. 1005.) "[A]s a general rule . . . a 'willful and unprovoked physical act of aggression' includes an intent to injure requirement." (*Id.* at p. 1006.)

■ In *Torres, supra*, 26 Cal.4th at p. 1008, the California Supreme Court ruled: "To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise." (*Ibid.*) It used as an example an earlier case that found "throwing [a] hammer at [a] person was within [the] scope of employment." (*Ibid.*) Here, the wheelbarrow incident took place at the worksite, during the scope of McMinn's employment, and arose from a workplace dispute over use of the wheelbarrow. The circumstances surrounding the wheelbarrow incident, and the injury Jones claims to have suffered, do not remotely approach the gravity of the hammer throwing example in *Torres*. "Flare-ups, frustrations, and disagreements among employees are commonplace in the workplace and may lead to 'physical act[s] of aggression.' [Citations.] ' "In bringing [people] together, work brings [personal] qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." ' " (*Id.* at p. 1009.) Accordingly, as a matter of law, the workers' compensation exclusivity rule applies to Jones's assault and battery cause of action.

## Negligent Supervision and Retention

Jones alleged her employer knew or should have known that the male correctional officers engaged in acts of harassment in the past, and it "allowed defendant McMinn to continue to work in its place of business with no form of discipline or reprimand for his acts of harassment and assault on plaintiff." Respondents again relied on the workers' compensation exclusivity rule and countered, "The motion addresses this issue as a matter of law and is [sic] not based upon any undisputed material facts."

■ Subdivision (c) of Labor Code section 3601 "insulates the employer from common law vicarious liability to an employee for the acts of another employee." (*Iverson v. Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 227 [191 Cal.Rptr. 696].) This cause of action by logic necessarily fails as well because it was based on Jones's claims of assault and battery and discrimination, which, as we discussed above, were properly resolved by the trial court's grant of summary judgment.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

Huffman, Acting P. J., and McDonald, J., concurred.