Filed 3/18/14  Phillips v. American Hapkido Mixed Martial Arts Studio CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROBERT AND MIGA PHILLIPS,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>AMERICAN HAPKIDO MIXED MARTIAL ARTS STUDIO and RENATO SUSIM,<br><br>    Defendants and Respondents. | 2d Civil No. B249116<br>(Super. Ct. No. 56-2011-00398454)<br>(Ventura County) |

Robert Phillips (Phillips) and his wife, Miga Phillips, appeal from the judgment entered after the trial court granted motions for summary judgment filed by respondents American Hapkido, Inc., (American Hapkido) and Renato Susim.  Appellants claim that Phillips suffered a stroke as a result of a blow to the head at a martial arts school operated by American Hapkido.  They contend that the trial court erred in granting the motions for summary judgment because they had raised triable issues of material fact concerning respondents' alleged negligence and recklessness.  We affirm.

*Facts*

Phillips, who was experienced in martial arts, was punched in the head by Susim during an evening "contact sparring session."  "Contact sparring is where contact is made by a fist or kick to the body."  The sparring session was supervised by Joseph Gutierrez,

an employee of American Hapkido. Gutierrez, who had "been participating in martial arts for 17 years," was "in charge of teaching [contact sparring] on the night in question." Gutierrez explained that in contact sparring "[t]he force that is allowed is light contact," also referred to as "kiss contact," which is "like you're trying to kiss your grandmother." A person throwing a punch is supposed to pull the punch as soon as or before contact is made.

According to Susim, he "threw a jab" and Phillips stepped "forward into the punch." According to Phillips, Susim "was sparring harder than he normally did" and "hit [him] with a combination jabbing cross." Phillips complained to Gutierrez that he had " 'got rocked' " by Susim's punch. Gutierrez told Susim that the punch " 'was a little hard' " and that he should " 'tone it down.' " "Gutierrez testified in his deposition that he saw Susim throw a jab and Phillips walked into it." During the sparring session, Phillips was wearing Century P-2 headgear with a plastic faceguard. Susim's "punch pushed the [faceguard] in and cut the bridge of [Philips's] nose." Appellants claim that, as a result of the blow, Philips "suffered a stroke, secondary to dissection of the right internal carotid artery at the base of the skull."

*Complaint*

The complaint alleges two causes of action against respondents. One cause of action is for negligence. It alleges that (1) respondents "negligently operated, managed, maintained, taught, instructed, and/or participated in physical activities, which resulted in injuries and damages to [appellants]"; and (2) American Hapkido knew or should have known that the heardgear used by its students "was unreasonably dangerous," but it "continued to market the product to consumers including [Phillips], where there were safer alternatives." The other cause of action was for loss of consortium by Phillips's wife.

*Summary Judgment `Principles*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v.*

2.

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves." ' " (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228.) We must " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.)

Although we conduct a de novo review, "[w]e must presume the judgment is correct . . . ." (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.) Thus, "[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

### Susim's Motion for Summary Judgment

The record on appeal does not include the trial court's ruling on Susim's motion for summary judgment. Irrespective of the articulated reasons, Susim was entitled to relief. "[A] participant in an active sport breaches a legal duty of care to other participants - i.e., engages in conduct that properly may subject him or her to financial liability - only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 320.) "As applied to the present case, the foregoing legal

principle clearly supports the trial court's entry of summary judgment in favor of [Susim]. The declarations filed in support of and in opposition to the summary judgment motion establish that [Susim] was, at most, careless or negligent in" punching Phillips in the face. (*Ibid.*)

"This application of the *primary assumption of risk doctrine* recognizes that by choosing to participate, individuals assume that level of risk inherent in the sport." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 486.) "Under the primary assumption of risk doctrine, the defendant owes *no duty* to protect a plaintiff from particular harms arising from ordinary, or simple negligence. [Citation.]" (*Id*., at p. 489.) "Accordingly, those involved in a sporting activity do not have a duty to reduce the risk of harm that is inherent in the sport itself." (*Id*., at p. 486.)

Being punched in the head is a risk inherent in the sport of contact sparring, even where the contact is supposed to be "kiss contact." Before the sparring match between Phillips and Susim, Phillips punched another sparring partner, Dr. Gregg Hartman, in the face "with sufficient force that it cut [the] bridge of Dr. Hartman's nose, causing Dr. Hartman to bleed." (See *Rodrigo v. Koryo Martial Arts* (2002) 100 Cal.App.4th 946, 957 ["It is self-evident that a sport that involves interpersonal combat with both kicking and punching carries not just the inherent risk - but arguably the certainty - that a participant will not only kick and punch other participants but will also be kicked and punched by others"].)

*American Hapkido's Motion for Summary Judgment*

The record on appeal includes the trial court's ruling on American Hapkido's motion for summary judgment. The court concluded that, by engaging in contact sparring, Phillips had assumed the risk that he would be punched in the head. The court found that "[t]here is no evidence that . . . American Hapkido did anything that increased the risk associated with sparring between mixed martial arts students."

Appellants' action against American Hapkido was based in part on the allegedly reckless conduct of its instructor, Gutierrez. "[A] . . . sport instructor owes a duty to a student not to increase the risks inherent in the learning process undertaken by the

4.

student. [Citations.]" (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 482.) A sport instructor does not have "a duty to decrease the risks." (*Balthazor v. Little League Baseball, Inc.* (1998) 62 Cal.App.4th 47, 52.) Thus, a martial arts instructor and his employer are not liable for an injury suffered by a student unless their actions "increased the risk of injury inherent in learning the sport." (*Rodrigo v. Koryo Martial Arts*, *supra*, 100 Cal.App.4th at p. 957.)

There is no evidence that Gutierrez's actions increased the risk of injury inherent in learning the sport of contact sparring. Gutierrez made an effort to assure that his students were not injured. He testified that on prior occasions he had told Susim that Susim was hitting too hard. He had previously given the same warning to Phillips. "Every time in the beginning of class [Gutierrez] always talk[ed] about kiss contact." Before Susim punched Phillips in the head, Gutierrez was not put on notice that Susim was using excessive force against Phillips. Gutierrez testified that, during the sparring session in question, he did not notice any "unusually aggressive" conduct by either Susim or Phillips. Furthermore, it is undisputed that: (1) Gutierrez "had seen Phillips and Susim spar with light contact plenty of times, but [had] never seen uncontrolled or more than kiss contact by either of them to the head"; (2) during the sparring session in question, Phillips did not complain to Susim that he was hitting too hard and "does not recall" complaining to Gutierrez; (3) Phillips "was aware that it is a tradition in martial arts sparring that if one . . . thinks a sparring partner is getting a little too 'enthusiastic', one is to put his or her hand up and say something," but Phillips gave no such notification; and (4) Phillips "does not recall . . . Susim landing any strikes to [his] head or body prior to the subject strike [to the head] that night." In his deposition Phillips testified that he did not "remember having any issues" with Susim until the blow to the head.

Appellants argue that Gutierrez failed to properly inspect Phillips's Century P-2 headgear before the sparring match with Susim. Gutierrez examined the headgear and did not see any damage or cracks. Appellants cite no evidence showing that Gutierrez's inspection increased the risk of harm inherent in the sport of contact sparring, that the headgear was cracked or damaged, or that cracked or damaged headgear was a substantial

5.

factor in causing harm to Phillips. In their separate statement of material facts, appellants alleged that the headgear was "poorly made as is evidenced by all the damage to the foam that is on the mask including the breaking of the foam on the chin area *due to the punch by Susim*." (Italics added.) Appellants further alleged that Susim's punch caused "the foam below [Phillips's] chin" to split and caused "other cracking . . . as well." Appellants did not allege that the headgear was damaged or cracked before Susim punched Phillips in the head.

Appellants maintain that American Hapkido is liable for Phillips's injuries not only because of Gutierrez's recklessness but also because it recommended that students use Century P-2 headgear, which is allegedly not suitable for contact sparring. This issue is waived. In its separate statement of material facts, American Hapkido declared: "[Appellants] are not 'asserting . . . that American Hapkido made any negligent recommendation regarding any product. . .' " Appellants responded that this fact was "[u]ndisputed." "In reviewing a grant of summary judgment, '[w]e may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal. Thus, unless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create "triable issues of material fact" may not be raised or considered on appeal.' [Citations.]" (*Ashdown v. Ameron Internat. Corp.* (2000) 83 Cal.App.4th 868, 874.)

Even if the issue were not waived, appellants have failed to carry their burden of establishing error. Appellants have cited no evidence showing that American Hapkido's recommendation of Century P-2 headgear increased the risk that a participant in contact sparring would be injured by a carelessly thrown punch. American Hapkido had no duty to recommend headgear that would reduce this risk. (See *Balthazor v. Little League Baseball, Inc.*, *supra*, 62 Cal.App.4th at p. 52 ["Under primary assumption of risk, the defendant has a duty not to increase the risks inherent in the sport, not a duty to decrease the risks"].) Moreover, the manufacturer of the headgear "marketed [it] as suitable for sparring gear, and . . . always advertised it as sparring gear."

*Alleged Waiver of Assumption of risk*

We reject appellants' argument that the primary assumption of risk doctrine is inapplicable because American Hapkido's contract with Phillips provided that it would not be liable for injuries not caused by its negligence. Appellants interpret this provision as suggesting that "suit against American Hapkido is allowed with a showing of mere negligence."

" ' "Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, 'construction of the instrument is a question of law, and the appellate court will independently construe the writing.' " [Citation.]' " (*Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1483.) Appellants are in effect contending that American Hapkido waived the applicability of the primary assumption of risk doctrine. "Waiver is the intentional relinquishment of a known right. [Citation.]" (*West v. Sundown Little League of Stockton, Inc.* (2002) 96 Cal.App.4th 351, 362.) The contract provision "does not establish the intentional relinquishment of the affirmative defense of primary assumption of the risk." (*Ibid.*)

The judgment is affirmed.

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7.

Tari L. Codi and Barbara Lane, Judges

Superior Court County of Ventura

_____

Martin L. Stanley, Jeffrey R. Lamb, for Appelllants.

Michael J. Terhar, Jonathan E. Hembree, Rose W. Walker, for Ameridan Hapkido, Inc., Respondnet.

Richard S. Gower, Gregiory J. Bramlage; Inglish, Ledbetter, Dower & Warriner, for Renato Susim, Respondent.