[No. H024330. Sixth Dist. Aug. 25, 2003.]

MARIA ISABEL D. PEREZ, Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

COUNSEL

Dennis William Smith and Brian Beckwith for Plaintiff and Appellant.

McPharlin, Sprinkles & Thomas, Linda Hendrix McPharlin and Paul S. Avilla for Defendant and Appellant.

OPINION

**ELIA, J.**—Plaintiff, a nurse at Elmwood Men's Correctional Facility (Elmwood), sued her employer, the County of Santa Clara (County), for racial discrimination and retaliation under the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940 et seq.) After a court trial, she failed to recover on her complaint. On appeal, plaintiff contends that the court erroneously converted a burden of production into a burden of persuasion by misapplying *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817]. She further challenges a protective order restricting her access to the personnel records of other nurses at Elmwood. We find no error in the court's application of the law and therefore affirm the judgment in the County's favor.

The County has appealed from a postjudgment order granting plaintiff's motion to tax costs. We agree with the County that the discretion to award costs to a prevailing defendant is not limited to cases in which the plaintiff's action was frivolous, unreasonable, or without foundation. We therefore reverse the order and remand for the court to exercise its discretion with regard to the claimed costs.

BACKGROUND

Plaintiff, who is one-half Filipina, was an experienced acute-care nurse before starting her employment at Elmwood in 1996. She was hired to work "half code"[1] on the evening shift and was classified as a clinical nurse II. Jeannie Haskins, the nurse manager, had hired plaintiff at the recommendation of Marilyn Thornton, assistant nurse manager.

Haskins and Thornton, both Caucasian, initially supervised plaintiff. On April 7, 1997, Thornton gave plaintiff a positive performance evaluation and recommended that she be promoted to clinical nurse III within the next 12 months. On July 18, 1997, plaintiff requested such a promotion, but Thornton told her that she needed a few more months' experience as a charge nurse and time serving as a preceptor nurse before receiving a recommendation for promotion. Thornton stated that she would revisit the request in November, and indeed, she did make that recommendation on November 4, 1997. Shortly thereafter, plaintiff received the promotion, which took effect December 1, 1997.

---

[1] Plaintiff explained that "half code" meant five days out of the 10-day pay period.

On April 6, 1998, plaintiff filed her first Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that the delay in her promotion constituted discrimination on the basis of race (Asian) and national origin (Filipina). She also alleged retaliation because of her union activities. In January 1998 plaintiff had been elected vice-president of the employees union, a position that allowed her to help other nurses who had complained of discrimination at Elmwood. Plaintiff further alleged that she had been falsely accused of a medication error as the result of a "set-up."

At trial Thornton testified that the delay in the promotion was unrelated to plaintiff's being Filipina. She knew that plaintiff was a union vice-president and in that capacity worked with "unhappy nurses" but she was unaware of the assistance plaintiff might have been giving to anyone pursuing discrimination claims. Thus, she said, the promotion delay had nothing to do with plaintiff's opposition to discrimination against either her or other employees.

During the two years before this discrimination charge, plaintiff had received three oral "counselings"—private discussions about minor mistakes—and one written counseling, a memorandum about a more serious error. She had also received a written "Employee Unfavorable Report" from Haskins after she erroneously gave a patient a tetanus toxoid shot.

Over the next two years, plaintiff received an oral counseling from Thornton; an oral counseling from her new assistant nurse manager, Juno Vega (a Filipino); and a written counseling from Haskins. In December 1999 her application was rejected for a "four–fifths" position,[2] which was given to another Filipina nurse by Haskins's replacement, Remy Panlilio (also Filipina).

On March 29, 2000, plaintiff filed a second Charge of Discrimination with the EEOC, again alleging racial discrimination and retaliation for her opposition to discriminatory practices and for her filing of a complaint with the Department of Fair Employment and Housing. In October 2000 she filed a third Charge of Discrimination with the EEOC, alleging retaliatory harassment based on her race, her national origin, and her 1998 charge of discrimination. Since the last filing she had received three oral counselings from Vega.

At trial plaintiff testified that between her first and second EEOC charges, she was closely monitored, denied requests for more hours, and subjected to undeserved discipline, daily hostility, and frequent harassment by Panlilio and Vega. Between the second and third charges, she said, she was harassed and harangued every day by Panlilio and Vega. Panlilio and Vega denied all of these accusations.

---

[2] A four-fifths position called for a nurse to work eight days out of 10.

On November 22, 2000, plaintiff received an oral counseling from Vega. Both raised their voices during the 15-minute meeting. Plaintiff left the counseling session feeling ill, and she telephoned her husband for a ride home. While waiting for the ride, she had her blood pressure taken. It was elevated, and she felt dizzy, weak, and nauseated. She was later diagnosed as having suffered a hypertensive episode, and she went on disability leave from Elmwood. By the time of trial she had still not returned to work because she was afraid of another medical "incident."

Plaintiff filed a third amended complaint in December 2000, alleging employment discrimination, retaliation, and harassment in violation of the FEHA, Government Code section 12940, subdivisions (a), (f), (h), and (i). Following a nine-day trial, the court stated the following findings. First, plaintiff had established a prima facie case of intentional discrimination in the 1998 delay in promotion, but the County had established a legitimate nondiscriminatory reason for the delay, and plaintiff had failed to prove that this reason was pretextual. Plaintiff had also failed to establish a causal link between the delay and the "(unsubstantiated) allegations of discrimination set forth in her first EEOC Charge of Discrimination." As to the denial of the four–fifths position, plaintiff likewise had shown a prima facie case of discrimination, but again the County had rebutted plaintiff's showing by clear and convincing evidence. The court also found that plaintiff had failed to show a causal link between the denial of her request and the charge of discrimination and retaliation set forth in the second EEOC Charge of Discrimination. Finally, the court found that plaintiff had established a prima facie case of retaliation and harassment, but the County had rebutted her showing by clear and convincing evidence, and there was no causal link between her complaints of discrimination and the "(unsubstantiated) allegations of retaliation and harassment set forth in her three EEOC Charges of Discrimination." The court parenthetically noted that nurses of various races and nationalities had complained of preferential treatment at Elmwood, including some who believed that Filipino nurses were favored.

DISCUSSION

1. *Standard of Proof*

In reaching its verdict the trial court applied the formula set forth in *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. 792 (*McDonnell Douglas*). Under that formula the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The plaintiff can meet this burden "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was

rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." (*Id.* at p. 802 [36 L.Ed.2d at p. 677].) If the plaintiff succeeds in establishing the prima facie case, a presumption of discrimination arises, and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." (*Ibid.; Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253 [67 L.Ed.2d 207, 101 S.Ct. 1089]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) If the employer carries this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (*Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. at p. 253 [67 L.Ed.2d at p. 215].) That is, the plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." (*McDonnell Douglas, supra,* 411 U.S. at p. 805 [36 L.Ed.2d at p. 679].)

Plaintiff contends that the *McDonnell Douglas* formula is strictly one of production, not of persuasion. In her view, once the County rebutted her prima facie case, she was required only to *produce* evidence that the proffered reason was a pretext for discrimination, not to negate completely the employer's explanation. Her only burden of proof, she argues, was to prove that "but for the discriminatory motive, the adverse employment actions would not have occurred." The trial court, however, "transform[ed]" her burden of production into a burden of persuasion by compelling her to "affirmatively prove that intentional discrimination and retaliation were the real reasons for the COUNTY's actions. This formulation sets the bar too high …."

Plaintiff misunderstands her evidentiary obligation. Once the employer succeeds in carrying its burden of production, the *McDonnell Douglas* framework, *including* the discrimination presumption, *disappears.* (*Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 356.) The burden then shifts back to the plaintiff to *prove* that the employer's proffered justification is mere pretext. (*Ibid.*) "[A]lthough the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " (*St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 507 [125 L.Ed.2d 407, 416, 113 S.Ct. 2742], quoting *Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. at p. 253 [67 L.Ed.2d at p. 215].)

Plaintiff thus retained the burden of convincing the court, as trier of fact, "that she has been the victim of intentional discrimination. She may succeed

in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (*Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. 248, 256 [67 L.Ed.2d 207, 217].) Although plaintiff initially presented sufficient evidence of discrimination to establish her prima facie case, that burden was "not onerous."[3] (*Id.* at p. 253.) In determining that plaintiff had met this initial burden with respect to the delay in the promotion and denial of the four-fifths position, the court went no further than to find that plaintiff was a member of a protected class who was qualified for the positions sought, and that she had suffered adverse employment action. These findings were consistent with the guidance offered by our Supreme Court in *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at page 355.[4] They were not sufficient to compel a verdict in plaintiff's favor, but only shifted the burden to the County. It is only when the employer fails to rebut the presumption that " 'the court must enter judgment for the plaintiff because no issue of fact remains in the case.' " (*Guz,* at p. 355.) That did not happen here. In each instance, the court found that plaintiff's showing had been rebutted by the County's evidence.

The trial court went even further in its factual conclusions. It found that the County not only *produced* evidence of legitimate nondiscriminatory reasons for its actions, but established those reasons by clear and convincing evidence. At that point the initial presumption of discrimination fell away and plaintiff was held to her ultimate burden of showing, by a preponderance of the evidence, that the delay in her promotion and the denial of the four-fifths position amounted to discrimination. She failed to meet that burden. She also failed to convince the court that she had suffered harassment and retaliation based on her active opposition to alleged discriminatory practices at Elmwood. No evidentiary error appears on this record. In light of this finding, we need not reach plaintiff's assertion that because the court misapplied the law, it erroneously found insufficient the evidence of discrimination and retaliation by the managing nurses at Elmwood.[5]

---

[3] To make a prima facie showing, a plaintiff need only "prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." (*Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. at p. 253.)

[4] In *Guz v. Bechtel National Inc.,* the Supreme Court observed that "[t]he specific elements of a prima facie case may vary depending on the particular facts. [Citations.] Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 355.)

[5] Although plaintiff appears to challenge the evidentiary support for the court's factual findings, she does so only in the context of setting forth the "consequences" of the court's

## 2. *Protective Order*

The County moved before trial for an order prohibiting disclosure of the personnel records of 65 Elmwood nurses. Plaintiff wanted this information to prove disparate treatment in the disciplinary process at Elmwood. Citing article I, section 1 of the California Constitution and Government Code section 6254, the County maintained that disclosure of these records would be an unwarranted invasion of privacy. The County noted that the affected nurses had objected to disclosure of their records, and that the court had already expressed the view that interrogatories would accomplish plaintiff's objective. The court granted the motion without prejudice to plaintiff's seeking specific documents on a showing of good cause.

On appeal, plaintiff contends that the trial court "should have balanced the competing interests" involved. She maintains that she had no less intrusive means than to discover the nurses' disciplinary information. In some cases, she points out, a nurse might have been unaware that she was being disciplined when she received an oral counseling, or that an unfavorable report had been placed in her file after an incident. Consequently, plaintiff believes she should have been allowed to see the personnel records themselves.

■ As plaintiff acknowledges, the court's order is reviewed under the abuse-of-discretion standard. Accordingly, we may not set aside the order unless the trial court exceeded the bounds of reason—that is, no judge could have reasonably reached the challenged result. (*Department of Motor Vehicles v. Superior Court* (2002) 100 Cal.App.4th 363, 369 [122 Cal.Rptr.2d 504]; *Cadiz Land Co. v. Rail Cycle* (2000) 83 Cal.App.4th 74, 117 [99 Cal.Rptr.2d 378].) "We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881–882 [94 Cal.Rptr.2d 505].)

Plaintiff has not met her burden on appeal to demonstrate an abuse of discretion. The court impliedly found that the balance between the nurses' privacy interests and plaintiff's need for the information was appropriately struck by the County's provision of interrogatory answers listing the type and number of disciplinary acts regarding nurses identified by race but not by

---

erroneous application of *McDonnell Douglas*. Because we have found no error in the court's reasoning, we need not consider whether the employer's reasons for delaying plaintiff's promotion and denying her the four–fifths position were legitimate or, as plaintiff describes them, "lame." For the same reason it is not necessary to address plaintiff's contention that the oral counselings subjected her to harassment.

name. Plaintiff does not show that this determination exceeded the bounds of reason under the circumstances before the court. Whether we would have made a different decision is not controlling, since no abuse of discretion is shown.

## 3. *The County's Appeal*

After entry of the court's statement of decision, the County filed a cost bill requesting $13,104.41 for deposition costs, witness fees, and other amounts expended in defending the lawsuit. It did not seek attorney fees. Plaintiff moved to tax costs. The court granted the motion, citing *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383 [15 Cal.Rptr.2d 53] (*Cummings*).

" 'The right to recover costs exists solely by virtue of statute.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989 [73 Cal.Rptr.2d 682, 953 P.2d 858]; *Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436, 439 [71 Cal.Rptr.2d 452, 950 P.2d 567].) The County relies on the general provision for costs in Code of Civil Procedure section 1032, subdivision (b), which states: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Plaintiff responds that a statutory exception to this general provision does exist: Government Code section 12965, subdivision (b) (hereafter section 12965(b)) allows a court to exercise its *discretion* to award or deny costs to a prevailing defendant.[6]

We disagree that section 12965(b) states an exception to the general rule of Code of Civil Procedure section 1032, subdivision (b), as it does not expressly *disallow* recovery of costs by prevailing defendants. (Cf. *Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th 985, 991 [mere absence of costs provision for prevailing sellers in Civ. Code § 1794, subd. (d) does not constitute exception to Code Civ. Proc., § 1032, subd. (b)].) The point is of no moment, however, as it is clear that section 12965(b) governs the costs at issue here. Plaintiff recognizes that this statute accords a trial court discretion to award costs. The only question is whether the court must find the action to be frivolous, unreasonable, or groundless before it may exercise that discretion to award costs to a prevailing FEHA defendant.

In *Cummings,* the Second Appellate District, Division Seven, overturned an award of attorney fees and costs as an abuse of discretion because the

---

[6] Section 12965(b) states, in pertinent part: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity."

plaintiff's age discrimination claim could not be deemed "frivolous, unreasonable or groundless." (*Cummings, supra,* 11 Cal.App.4th at p. 1390; see also *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859 [110 Cal.Rptr.2d 903] [under *Cummings,* attorney fee award to successful FEHA defendant was abuse of discretion]; *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 921–922 [57 Cal.Rptr.2d 917] [attorney fee award proper where discrimination claim was frivolous, without foundation and brought in bad faith]; *Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 830–831 [118 Cal.Rptr.2d 807] [award of fees based solely on lack of merit in plaintiff's case improper under *Cummings* standard].) The result in *Cummings* was derived from the holding in *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [54 L.Ed.2d 648, 98 S.Ct. 694], where the United States Supreme Court fashioned a standard for awarding attorney fees to a prevailing defendant in an action under the Civil Rights Act of 1964. The court was considering section 706(k) of title VII, which allows a court in its discretion to grant "a reasonable attorney's fee as part of the costs" to the prevailing party. (42 U.S.C. § 2000e-5(k).)[7] When the defendant is the prevailing party, the court held, the court may award attorney fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even [if] not brought in subjective bad faith." (*Christiansburg Garment Co. v. EEOC, supra,* 434 U.S. at p. 421.)

The *Cummings* court held that a trial court "must" use the *Christiansburg* standard in exercising discretion to award "fees and costs" to a prevailing defendant. (*Cummings, supra,* 11 Cal.App.4th at p. 1387.) But the issue in *Christiansburg* was limited to the recovery of *attorney fees.* Costs outside of those fees were not at issue. In *Cummings,* the court did not segregate the two parts of the award in applying *Christiansburg,* but overturned them together.[8] Indeed, the court even represented the *Christiansburg* holding as pertaining to both attorney fees and costs. (*Cummings supra,* at p. 1387 ["Thus, the [*Christiansburg*] court found the standard for awarding prevailing defendants attorney fees and costs to be entirely different"].)

We find this blending of fees and costs to be unnecessary and inappropriate. Several federal courts themselves have refused to apply the *Christiansburg* test for recovery of defense attorney fees to ordinary litigation

---

[7] Currently this statute provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." (42 U.S.C. § 2000e-5(k).)

[8] Of the $64,468.45 award in *Cummings,* $60,318.50 represented attorney fees.

expenses.[9] (See, e.g., *Byers v. Dallas Morning News, Inc.* (5th Cir. 2000) 209 F.3d 419, 430; *Cosgrove v. Sears, Roebuck & Co.* (2d Cir. 1999) 191 F.3d 98, 101–102; *Delta Air Lines, Inc. v. Colbert* (7th Cir. 1982) 692 F.2d 489, 490; *Nat. Organization for Women v. Bank of California* (9th Cir. 1982) 680 F.2d 1291, 1294.) "The rationale for this distinction is clear. Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable, and, compared to the costs of attorneys' fees, small." (*Poe v. John Deere Co.* (8th Cir. 1982) 695 F.2d 1103, 1108.) "If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d) would have little substance remaining." (*Popeil Bros., Inc. v. Schick Electric, Inc.* (7th Cir. 1975) 516 F.2d 772, 776.)

■ By parity of reasoning, we believe that ordinary litigation costs are recoverable by a prevailing FEHA defendant even if the lawsuit was not frivolous, groundless, or unreasonable. Costs are recoverable under Rule 54(d) of the Federal Rules of Civil Procedure (28 U.S.C.) "as a matter of course" unless costs are expressly provided for by statute or rule, or the court in its discretion directs otherwise. Similarly, Code of Civil Procedure section 1032, subdivision (b) provides for costs "as a matter of right" absent express statutory provision, and section 12965(b) specifically allows "reasonable attorney's fees and costs" within the court's discretion. ■ That attorney fees are considered a component of costs when a statute refers to "costs and attorney's fees" (Code Civ. Proc., § 1033.5, subd. (c)(5)) does not compel the converse conclusion, that all costs must be treated like attorney fees. (Cf. 42 U.S.C. § 2000e-5(k) ["reasonable attorney's fee ... as part of the costs"].) We therefore disagree with the *Cummings* court's extension of the *Christiansburg* standard for attorney fees to ordinary litigation expenses allowed by Code of Civil Procedure section 1033.5. A prevailing defendant should be able to recover these costs even if the plaintiff did not bring a frivolous, groundless, or unreasonable lawsuit.

Although plaintiff maintains that the trial court "appropriately exercised its statutorily conferred discretion ... in a close case," we draw a different conclusion from the court's statement of decision. In denying the County's request for costs, the court found the holding of *Cummings* to be "dispositive" and did not discuss any other factors in its reasoning. It thus appears that because plaintiff's action was not frivolous, unreasonable, or groundless, the court believed it lacked authority to grant the County any costs. Because

---

[9] Under the federal rules, "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, *costs other than attorneys' fees* shall be allowed as of course to the prevailing party unless the court otherwise directs ...." (Fed. Rules Civ. Proc., rule 54(d)(1), 28 U.S.C.)

we have rejected the *Cummings* limitation, we remand this matter to allow the court to exercise its sound discretion on the County's request pursuant to section 12965(b).

### DISPOSITION

The March 4, 2002 judgment is affirmed. The March 26, 2002 order granting plaintiff's motion to tax costs is reversed, and the matter is remanded to permit the court to exercise its discretion on the County's request for costs. Costs for this appeal are awarded to the County.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

The petition of appellant Maria Isabel D. Perez for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.