[Nos. B232172, B234487. Second Dist., Div. Eight. Mar. 28, 2012.]

ERIC BAKER, Plaintiff and Appellant, v.
MULHOLLAND SECURITY AND PATROL, INC., Defendant and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 1. of the Discussion.

## COUNSEL

Eisenberg & Associates, Michael B. Eisenberg and Joseph S. Socher for Plaintiff and Appellant.

Squire, Sanders & Dempsey, Alexandra A. Bodnar, Casey J.T. McCoy; Ogletree, Deakins, Nash, Smoak & Stewart and Alexandra A. Bodnar for Defendant and Respondent.

## OPINION

**GRIMES, J.**—Eric Baker (plaintiff) sued Mulholland Security and Patrol, Inc. (defendant), for retaliation, failure to pay overtime compensation, and failure to maintain records, claiming he was terminated after just 13 days of employment when he complained about discriminatory remarks made at his workplace. The trial court disposed of his retaliation claim by summary adjudication, and the remainder of his claims were dismissed after the parties reached a settlement. The trial court concluded plaintiff was terminated for his poor performance and that plaintiff failed to demonstrate there were triable issues whether defendant's justification for its termination decision was pretextual. Plaintiff filed two appeals, which were consolidated, challenging the judgment on the retaliation claim, as well as the trial court's order awarding expert witness fees to defendant. Finding no error with the summary adjudication of plaintiff's retaliation claim, we affirm the judgment. However, we conclude the trial court applied an erroneous legal standard in awarding defendant its expert witness fees, and that any expert fee award

would be an abuse of discretion because plaintiff made a sufficient prima facie showing of retaliation. We therefore reverse the expert fee award.

## BACKGROUND

The following facts are undisputed: Plaintiff began working for defendant on February 18, 2009. After three days of training and seven days working as a security guard for defendant's client, the Heschel School, defendant received its first complaint about plaintiff's job performance. Atanacio "Tony" Guerrero (Guerrero), Heschel's maintenance manager, contacted defendant on March 4, 2009, and complained plaintiff was making personal phone calls and ignoring his duties while on the phone; that he ignored Betty Winn, the head of the Heschel School, when she confronted him about his phone use; and he was rude and unprofessional, and had problems operating the school's security gate. Bruce Ferreira (Ferreira), defendant's account manager for the Heschel School, forwarded the complaints to Daniel Campbell (Campbell), defendant's co-owner and vice-president of human resources, who directed Ferreira to write a warning notice. Ferreira wrote the notice on March 4, 2009. He also confirmed the complaints with the client, Ms. Winn, on March 6, 2009, and talked with plaintiff about paying attention to his job duties and not using the phone for personal calls during business hours.

On March 11, 2009, Ferreira received another complaint about plaintiff's job performance. Guerrero informed Ferreira that plaintiff was again on the phone making personal calls, and he had a bad attitude. Ferreira called Campbell to report the complaint, and it was decided that plaintiff should be sent home because the client was very upset. Plaintiff was directed to meet with Campbell the following day. Ferreira drafted another warning notice.

On the evening of March 11, field supervisor Mike Powell (the field supervisor, or Powell) e-mailed members of defendant's management, including Campbell, to report that plaintiff had complained about racist and discriminatory comments by a Heschel employee.

Plaintiff met with Campbell on March 12. They met again on March 18, and plaintiff was terminated at this meeting.

In support of its summary judgment motion, defendant introduced evidence that client complaints about plaintiff's job performance were the reason for the termination. Campbell made the decision to terminate plaintiff before he learned about plaintiff's complaints of discrimination. Campbell decided to

terminate plaintiff on March 11, because plaintiff had been employed for only 13 days, was still in his introductory period, and had already received two client complaints. Because serious concerns about plaintiff's job performance arose during the first weeks of his employment, Campbell decided "he was not well suited for the job and would likely run into similar problems if he was reassigned to another client rather than let go." Campbell did not read Powell's e-mail describing plaintiff's complaints of discrimination until after he made the decision to terminate plaintiff. Campbell, as the vice-president of human resources, made the company's termination decisions. Although David Rosenberg, defendant's president, may have initially recommended reassigning plaintiff, it was Campbell's job to make the decision, and he believed plaintiff should be terminated. Plaintiff's employment was at will.

Campbell met with plaintiff on March 12 and discussed his performance issues. Plaintiff told Campbell he was on the phone reporting payroll problems and that the gate malfunctioned. Although Campbell had already decided to terminate plaintiff, Campbell agreed to investigate the matters to give plaintiff "closure." Plaintiff's explanation did not change Campbell's decision to terminate plaintiff because even if true, plaintiff was ignoring his duties when the calls were made. At the March 12 meeting, Campbell learned for the first time that plaintiff complained that Guerrero made racist and inappropriate remarks. Campbell directed Ferreira to investigate the incident. Campbell thereafter investigated plaintiff's explanation for being on the phone and discovered he had used the phone to report a payroll issue. He also discovered the gate had at all times functioned properly, and plaintiff had been trained how to use the gate. Campbell met with plaintiff again on March 18 and terminated his employment due to his performance issues.

Plaintiff disputed the truth of defendant's justification, reasoning defendant initially intended to reassign him to another location after receiving client complaints, but decided to terminate him after he reported discriminatory remarks made by Guerrero. He did not dispute that defendant received complaints from its client about his job performance.

Plaintiff introduced evidence that defendants knew about his protected activity before terminating him. On March 11, 2009, plaintiff reported Guerrero's discriminatory comments to his field supervisor and to Campbell. He also made a written report. A string of e-mails on the evening of March 11 discussed plaintiff's report of discriminatory comments. At 9:09 p.m. on March 11, Powell e-mailed defendant's management, David Rosenberg,

Steven Lemmer, Ferreira, and Campbell, saying that the Heschel School had made complaints about plaintiff's job performance and that plaintiff told Powell "Tony Guerrero has been making racial slurs towards officers."

Powell e-mailed defendant's management again at 9:30 that evening, relaying that plaintiff told him "he will have to pursue legal action if the work environment he is working in does not change." Plaintiff told Powell "it would be unfair for him to lose his job under these conditions and would have no alternative but legal action if nothing else can be worked out." In response to Powell's e-mail, David Rosenberg e-mailed his recommendation that plaintiff be sent home with pay for the remainder of his shift, and that he go to the office on March 12 for "reassignment." At 9:54 p.m., Ferreira e-mailed that he had relieved plaintiff and sent him home. In response, at 9:57 p.m., Campbell requested that Ferreira "have all the info on both incident[s] and we talk about [it] tomorrow."

Plaintiff did not receive copies of any "employee warning notices" relating to his performance issues until he was terminated. Campbell told him "he would see about relocating" plaintiff at their March 12 meeting, but later terminated him.

With its reply brief, defendant introduced additional evidence, consisting of transcripts from the depositions of plaintiff, David Rosenberg, Campbell, and Guerrero, as well as an application for state unemployment benefits filed by plaintiff between March 11 and March 16, claiming he was "laid off due to lack of work." Plaintiff orally objected to this evidence at the hearing on the motion, reasoning he did not have "notice and an opportunity to respond." He also objected to defendant's separate statement filed with its reply brief as an "improper document." No ruling on these objections appears in the record.

The trial court granted defendant's motion for summary adjudication, concluding that defendant set forth a legitimate, nonretaliatory reason for its termination decision. It overruled plaintiff's objections to declarations submitted by Ferreira and Powell. After entry of judgment, defendant moved to recover its expert witness fees, maintaining it was "entitled, by right, to have allowable costs awarded to it as the prevailing party." The trial court granted the motion and defendant was awarded $2,350 incurred as expert witness fees on the basis that expert witness fees are recoverable by a prevailing California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) defendant even if the action was not " 'unreasonable, frivolous, or vexatious.' "

## DISCUSSION

1. *Summary Adjudication**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Expert Witness Fees*

Plaintiff contends the trial court applied an erroneous legal standard when it determined that expert witness fees may be awarded to a prevailing FEHA defendant without requiring a showing that the plaintiff's claim was frivolous, and that in any event, plaintiff's case was not frivolous. We agree, and therefore reverse the order awarding expert witness fees.

We review the trial court's construction of the law de novo. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].) The exercise of the trial court's discretion to award fees is reviewed for an abuse of discretion. (See *Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762, 765–766 [89 Cal.Rptr.2d 429].)

■ Code of Civil Procedure section 1032, subdivision (b) entitles the prevailing party in an action to recover certain litigation costs as a matter of right. Code of Civil Procedure section 1033.5, subdivision (a) sets forth the items that are allowable as costs under Code of Civil Procedure section 1032. The allowable items include "[f]ees of expert witnesses ordered by the court." (Code Civ. Proc., § 1033.5, subd. (a)(8).) Section 1033.5, subdivision (b) limits the items that are allowable as costs, and specifically prohibits fees of expert witnesses not ordered by the court, "except when expressly authorized by law." (*Id.*, § 1033.5, subd. (b)(1).) ■ FEHA permits recovery of expert witness fees, within a court's discretion. (Gov. Code, § 12965, subd. (b) ["the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees . . ."].)

It is well settled that a prevailing defendant in a FEHA action "may recover attorney fees only when the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith. [Citation.]" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985 [104 Cal.Rptr.3d 710, 224 P.3d 41]; see *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [54 L.Ed.2d 648, 98 S.Ct. 694] (*Christiansburg*).) "[T]he strong equitable considerations supporting an attorney fee award to a prevailing plaintiff— including that fees are being awarded against a violator of federal law, and that the federal policy being vindicated by the plaintiff is of the highest

---

*See footnote, *ante*, page 776.

priority—are not present in the case of a prevailing defendant." (*Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474 [86 Cal.Rptr.3d 507].)

The Courts of Appeal are split about whether this standard applies to an award of *ordinary litigation costs* to a prevailing FEHA defendant. (Compare *Perez v. County of Santa Clara* (2003) 111 Cal.App.4th 671, 681 [3 Cal.Rptr.3d 867] (*Perez*) ["ordinary litigation costs are recoverable by a prevailing FEHA defendant even if the lawsuit was not frivolous, groundless, or unreasonable"] and *Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 134–135 [33 Cal.Rptr.3d 287] (*Knight*) [same] with *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 [15 Cal.Rptr.2d 53] (*Cummings*) [*Christiansburg* standard applies when determining whether to award fees and costs to a prevailing FEHA defendant].)

No California case has specifically addressed the applicability of the *Christiansburg* standard to the recovery of expert witness fees, as opposed to ordinary litigation costs, by a prevailing FEHA defendant under Government Code section 12965, subdivision (b). The court that has come closest to doing so addressed the issue in dicta. In *Holman v. Altana Pharma US, Inc.* (2010) 186 Cal.App.4th 262, 279 [111 Cal.Rptr.3d 554], the court concluded that a prevailing FEHA defendant could recover expert witness fees under Code of Civil Procedure section 998, without making a showing that the *Christiansburg* standard was satisfied. (*Holman*, at pp. 281–283.) The court opined, however, that *Christiansburg* was applicable to expert witness fees awarded under Government Code section 12965 (as opposed to Code Civ. Proc., § 998) because federal courts apply the *Christiansburg* standard not only for attorney's fees, but also for expert witness fees, to prevailing defendants in title VII cases. (*Holman*, at p. 280.)

 We agree the standard applicable to attorney's fees should apply to expert witness fees for a prevailing FEHA defendant. Expert fees, just like attorney's fees, are not ordinary litigation costs which are routinely shifted under Code of Civil Procedure sections 1032 and 1033.5. Like attorney's fees, expert fees should be treated differently than ordinary litigation costs because they can be expensive and unpredictable, and could chill plaintiffs from bringing meritorious actions. (See, e.g., *Perez, supra,* 111 Cal.App.4th at p. 681 [" 'Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable, and, compared to the costs of attorneys' fees, small.' [Citation.]"].) Just like attorney's fees, expert witness fees authorized by Government Code section 12965 are subject to the trial court's discretion and are not recoverable as a matter of right, as are other routine litigation expenses. (Compare Gov. Code, § 12965, subd. (b) ["the

court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees . . ."] with Code Civ. Proc., §§ 1032, subd. (b) ["Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."], 1033.5.)

█ While the plain language of Government Code section 12965, subdivision (b) does not address whether expert witness fees sought by prevailing FEHA defendants are subject to the *Christiansburg* standard, when the Legislature amended section 12965 in 1999 to provide for the recovery of expert witness fees, it brought California law into alignment with title VII. (Stats. 1999, ch. 591, § 12, p. 4221; 42 U.S.C. § 2000e-5(k) ["the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . ."].) Federal courts have concluded that "[a]ttorney's fees and expert witness fees may not be awarded to a prevailing defendant in a Title VII case unless the plaintiff's claim is 'frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.' [Citations.]" (*American Federation of State, County & Municipal Employees v. County of Nassau* (2d Cir. 1996) 96 F.3d 644, 646.) "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

█ In this case, the trial court relied on *Knight*, which concerned ordinary litigation costs, not expert witness fees, in concluding it was not necessary to find the action was frivolous in order to award expert fees to a prevailing defendant. (*Knight, supra*, 132 Cal.App.4th at pp. 134–135.) Since we find the *Christiansburg* standard applies to an award of expert witness fees in favor of a prevailing FEHA defendant, the trial court's ruling was erroneous because the court did not find this action was frivolous. In our review of the record, we conclude the action was not frivolous, because plaintiff made a prima facie case of retaliation. An action is not frivolous simply because the plaintiff's FEHA claim failed. (*Cummings, supra*, 11 Cal.App.4th at p. 1387.) Where some evidence of retaliation is presented, an action will not be deemed frivolous. (*Id.* at pp. 1389–1390.)

It was not argued in the trial court, or on appeal, that plaintiff's claim was unreasonable, without foundation, or brought in bad faith. Defendant's expert fee motion contended that expert fees may be recovered "even if plaintiff's lawsuit was not 'frivolous, unreasonable or groundless,' " a tacit admission that plaintiff's action was not frivolous. Accordingly, the order awarding defendant its expert witness fees must be reversed.

## DISPOSITION

The judgment is affirmed, and the postjudgment order awarding defendant's expert witness fees is reversed. The parties are to bear their own costs on appeal

Rubin, Acting P. J., and Flier, J., concurred.