Filed 3/4/13  Hatai v. Peo. of the State of Cal. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENNETH HATAI, | B236757 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC426766) |
| v. | |
| PEOPLE OF THE STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed.

Jay W. MacIntosh; and Henry J. Josefsberg for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Chris A. Knudsen and Terry R. Price, Deputy Attorneys General for Defendant and Respondent Sameer Haddadeen.

Ronald W. Beals, Chief Counsel, Linda Cohen Harrel, Deputy Chief Counsel, Jerald M. Montoya and Neil H. Brown for Defendant and Respondent the People of the State of California, acting by and through the Department of Transportation.

_____

Plaintiff and appellant Kenneth Hatai (Hatai) appeals a judgment following jury verdicts in favor of his employer, defendant and respondent People of the State of California, acting by and through the Department of Transportation (Caltrans), and his supervisor, defendant and respondent Sameer Haddadeen (Haddadeen).

In this employment discrimination case, Hatai alleged he was discriminated against because of Japanese ancestry and Asian race. At trial, Hatai sought to prove his discrimination claim by showing that Haddadeen, of Arab ancestry, discriminated against any employee who was not of Arab descent. The trial court disallowed Hatai's broad theory but allowed Hatai to present evidence of anti-Asian animus. We perceive no prejudicial error and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

Haddadeen was the office chief of the Caltrans Office of Traffic Investigations (OTI) in the District office located in Los Angeles. He supervised a number of Senior Traffic Engineers (STEs), including Hatai. Haddadeen, in turn, was supervised by Frank Quon, Deputy District Director for Operations; Quon reported to the Chief Deputy District Director, Raja Mitwasi, who in turn reported to the District Director, Doug Failing.

Following Haddadeen's 2006 promotion to chief of OTI, his superiors charged him with improving production and attendance and eliminating a backlog of safety investigations. Haddadeen monitored employee attendance by walking the floor at OTI.

On March 27, 2007, Hatai had a meeting with Quon and Mitwasi concerning Haddadeen's management style. They had another meeting on May 21, 2007. Hatai admitted that at neither meeting, the March 27 and May 21 meetings, did he assert he was being treated differently because of his Japanese or Asian ancestry.

2

On May 17, 2007, Karem Al-Chokhachi, an engineer who worked for another STE, Luu Nguyen, wrote a letter to Nguyen summarizing an incident with Haddadeen. In the letter, Al-Chokhachi stated Haddadeen told "me something which I consider it illegal act. He asked me that we should be friend and work together and stick together (in Arabic language) and try to help each other in our working area and if I need anything I can go back to him."

On June 5, 2007, Hatai, Nguyen, and six other STEs sent a letter to Failing, the District Director, complaining of Haddadeen's management. The June 4, 2007 letter asserted that Haddadeen had created a hostile work environment where employees were suspicious of one another, and that he had accused staff of falsifying time sheets without any proof. The letter also claimed that employees "have been racially discriminated, harassed, and retaliated against with respect to their race, ethnicity and national origin. Managers have tried to form alliances with staff of Arab descent using statements such as, 'We Arabs should stick together' in Arabic language [*sic*]."[1]

Director Failing responded to the June 5, 2007 letter by individually meeting with each of the STEs, including Hatai. Hatai admitted that Failing gave him the opportunity to air his grievances. Hatai did not complain to Failing of discrimination. Hatai simply told Failing that Haddadeen and his staff had "contempt" for one other. Hatai admitted he did not tell Failing "anything to the effect that Mr. Haddadeen was discriminating against [him] because [he was] Japanese or Asian." Hatai admitted he did not give Failing "a single example of an E.E.O. violation that he could have investigated . . . ."

---

[1] Thus, the June 5, 2007 letter, to which Nguyen was a signatory, was inconsistent with the earlier letter which Al-Chokhachi sent to Nguyen. According to exhibit 4, i.e., the May 17, 2007 letter from Al-Chokhachi to Nguyen memorializing the conversation between Al-Chokhachi and Haddadeen, Haddadeen merely told Al-Chokhachi, in Arabic, that they should "stick together," not that "We Arabs should stick together."

On August 4, 2007, Hatai wrote a letter to Lela Nishizaki, investigation manager at Caltrans Audits and Investigations in Sacramento. In said letter, Hatai did not assert that he was "being treated differently or badly because [he is] Japanese or Asian."

On October 31, 2007, Hatai was interviewed by Terry Baker, an investigator dispatched by the Caltrans Discrimination Complaint Investigation Unit (DCIU). Baker was referred the matter by Audits and Investigations because of possible Equal Employment Opportunity (EEO) issues raised by the June 5, 2007 letter. Hatai admitted that Baker "made it perfectly clear" he was there to investigate any complaints the STEs had about Haddadeen's EEO violations. Hatai did not provide Baker with any examples of being treated differently because of his Japanese or Asian ancestry. Hatai admitted that if he had any examples of such discrimination, he would have provided them to Baker. Baker concluded there was no EEO violation, but merely a dispute between two factions based on Haddaden, rather than Nguyen, having being promoted to office chief.

Beginning in December 2007, Hatai was absent from work due to his father's failing health. Haddadeen texted Hatai that he needed to bring a medical report from his doctor or his father's doctor or he would be "AWOL," and that a five-day AWOL was grounds for separation from state service. Haddadeen granted Hatai leave as requested. Hatai admitted Haddadeen did not do anything with respect to his medical or family leave based on Hatai's national origin or race.

On August 5, 2008, Hatai was further interviewed by Caltrans Audits and Investigations, by Teresa Esquivel Preciado and Lela Nishizaki. During the interview, which was transcribed and admitted into evidence as exhibit 25, Hatai complained, inter alia, that Haddadeen displayed a lack of respect for staff, as by cutting off debate at meetings. However, Haddadeen did not tell Preciado and Nishizaki that he suffered discrimination, retaliation or harassment because he was Japanese or Asian.

Hatai's performance at work deteriorated, resulting in a January 30, 2009 Letter of Warning from Haddadeen. The warning letter (exhibit 32), sets forth 11 examples of Hatai's disregarding Haddadeen's requests for information, as well as Hatai's failure to

meet assignment deadlines. At trial, Hatai conceded the accuracy of the charges made in the warning letter.

A major controversy in this case is what occurred on the afternoon of January 30, 2009, at the time Haddadeen gave Hatai the warning letter. Hatai's deposition testimony was highly inconsistent in this regard. In the course of his deposition, he gave three different accounts of the event.

(1) In the October 19, 2010 deposition session, Hatai testified that when Haddadeen handed him the warning letter, Haddadeen did not make any reference to Hatai's national origin or race.

(2) In the January 17, 2011, deposition session, Hatai testified that after Haddadeen gave him the warning letter, Haddadeen said "I'm going to discipline you because you are Asian."

(3) At the deposition session on February 2, 2011, Hatai again changed his testimony. When asked "when is it that Mr. Haddadeen said to you that he was disciplining you because you are Asian?", Hatai responded: "It was more like 'I'm going to get rid of you Asian troublemaker' at some later time. He didn't say he was doing it because he was disciplining me."

Later in the afternoon of January 30, 2009, shortly after Haddadeen gave Hatai the warning letter, Hatai sent an email (exhibit 33) to his superiors complaining of Haddadeen's treatment of him. In said email, Hatai did not assert he was being mistreated based on race or national origin.

On February 9, 2009, by which time Hatai had retained legal counsel, Hatai sent a five-page response (exhibit 34) to the warning letter. This letter was directed to Frank Quon, the deputy director of the district. The February 9, 2009 letter likewise lacked any allegation that Haddadeen's actions were motivated by Hatai's race or national origin.

On March 5, 2009, five weeks after the warning letter, Hatai was interviewed by Frank Quon and Gwen Correa. Hatai conceded he did not tell Quon and Correa "about either the 'Mr. Haddadeen is disciplining me because I'm Asian' or the he's going to get rid of you because you're an Asian troublemaker statement . . . ."

On April 24, 2009, three months after the warning letter, Hatai participated in a DCIU interview, which was transcribed (exhibit 37).  Similarly, in said interview, Hatai never mentioned the alleged "Asian troublemaker" or "I'm disciplining you because you're Asian" remarks.

Hatai continued to be employed at Caltrans, in the OTI office, supervising eight engineers.

On October 9, 2009, Hatai filed a discrimination complaint with the California Department of Fair Employment and Housing against Caltrans and Haddadeen and he received right-to-sue letters the same day.

2. *Proceedings*.

a. *Pleadings.*

On November 24, 2009, Hatai filed suit against Caltrans and Haddadeen.  The operative first amended complaint pled four causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940).  Hatai alleged race/national origin/ancestry discrimination (§ 12940, subd. (a)); harassment (§ 12940, subd. (j)); retaliation (§ 12940, subd. (h)); and failure to take reasonable steps to prevent discrimination and harassment (§ 12940, subd. (k)).  Although Hatai's pleadings contained a narrative of the January 30, 2009 meeting at which time Haddadeen gave Hatai the warning letter, there was no allegation that Haddadeen made the anti-Asian remarks to which Hatai later testified.

Although the first amended complaint consisted of four FEHA causes of action, the pleading was virtually bereft of factual allegations of race discrimination.  The pleading alleged at length that Haddadeen had mistreated Hatai, as by unreasonably demanding Hatai deliver a doctor's note on short notice when his father was hospitalized.

Hatai's factual allegations of discrimination were as follows:

Paragraph 1 alleged Hatai is of Asian or Japanese race or national origin or ancestry and thus a member of a protected class under FEHA.

6

At paragraph 48, he pled: "During Plaintiff's employment with Caltrans, Plaintiff observed that Defendants treated Asian employees differently and less favorably than non-Asian employees. Plaintiff complained about this to Caltrans' management. Caltrans, rather than remedying the situation retaliated against Plaintiff by further harassing Plaintiff, and by trying to force Plaintiff to quit. Plaintiff's observation of how Haddadeen treated Asian employees further created a hostile work environment."

The FEHA allegations then asserted in general terms that Hatai had been subjected to unlawful discrimination, he was "subjected to a continuing pattern of harassment by Haddadeen on the basis of his race and national origin/ancestry," he "observed that all Defendants treated Asian employees differently and less favorably than non-Asian employees," defendants "retaliated against Plaintiff because of [his] opposition to Defendants' discrimination and harassment," and defendants failed to take all reasonable steps to prevent discrimination and harassment from occurring.

b. *Defense motion in limine*.

Prior to trial, the defense made a motion in limine, Motion in Limine No. 2, to exclude "testimony and evidence of Luu Nguyen, Gary Kevorkian, Raja Mitwasi, Karem Al-Chockachi, Khosrow Kamali, Lewis Yee, Sheik Moinuddin, Steve Leung, himself and other individuals as to other lawsuits and/or complaints of discrimination, harassment and other complaints including the June 5, 2007 letter, that they have filed either internally at Caltrans (Caltrans Audits and Investigations, Caltrans EEO, Caltrans DCIU and the like) or presented in litigation."

Caltrans asserted that based on evidence Hatai had presented in opposition to summary judgment and during discovery, it believed Hatai intended to offer the testimony of those individuals at trial. Caltrans sought to preclude such testimony on the ground that claims of alleged harassment, discrimination or any other matters involving any individuals other than Hatai had no relevance to this case. "Plaintiff seeks to have the court try multiple cases at the same time hoping that some evidence will stick inuring to his benefit, even if the matters have nothing to do with his lawsuit. This would essentially allow for the trying of a case within a case."

7

Caltrans also argued such evidence should be excluded under Evidence Code section 352. "The introduction of this evidence [involving anyone other than Hatai] would greatly expand the scope of this trial. Each and every collateral claim would have to be litigated to ascertain the veracity of the claim and any potential defenses thereto. Numerous witnesses and numerous documents would be paraded before the jury to litigate matters that are not pertinent to the . . . claims raised by [Hatai] in [his] complaint. This is precisely the type of collateral matter that Evidence Code section 352 was enacted to cover."

At the hearing on the motion in limine, Hatai's counsel stated he intended to prove that Haddadeen had discriminatory intent "against anyone who is not an Arab."

The trial court responded, "[t]hat's not what you pled in your complaint. What you just said was that Mr. Haddadeen is prejudiced against and discriminates against anybody that's not an Arab."

Defense counsel added, "his repositioning of the case as now the Arab favoritism style case is new. It's not in the original complaint. It wasn't in the discovery. It wasn't in any of the depositions."

Hatai's counsel acknowledged that exhibit 6 (the June 5, 2007 letter signed by eight STEs), accusing Haddadeen of saying "We Arabs should stick together" was at the heart of the case. Hatai sought to present the "We Arabs should stick together" comment by Haddadeen in the context of Haddadeen's knowledge that Quon in the past allegedly had favored Asians at the expense of others."

The trial court ruled that Hatai would be allowed to show "there was a history of alleged favoritism for Asians, and this comment ['We Arabs have to stick together'] is somehow tied into that."

c. *Trial and verdict.*

The matter was tried to a jury, commencing June 9, 2011. On June 24, 2010, the jury returned defense verdicts in favor of both Haddadeen and CalTrans.

8

d. *Motion for new trial*.

Hatai filed a motion for new trial on the grounds of evidentiary and instructional error. Hatai argued it was error to exclude evidence of the "overall context of discrimination," that Haddadeen "openly favored employees of Arab ancestry," and the trial court should have allowed evidence of Haddadeen's harassment and discrimination against other employees who were not of Japanese or East Asian ancestry.

The trial court denied the motion for new trial and explained its rationale as follows: "The court would have reached the same decision as the jury with its own analysis of the evidence. [¶] The court permitted in this case the contextual testimony about the Arabs versus Asians, which seemed to be the crux of the background information that the plaintiffs wanted to admit into evidence, even though there's nothing in the complaint or the F.E.H.A. complaint about that. [¶] The complaint in the F.E.H.A. complaint, and there were other, I think, instances of this talked about, are discrimination based on his ancestry. And essentially the argument from the very beginning of this case was that . . . Mr. Haddadeen discriminated against everybody that was different than him. [¶] And the court never permitted that, but did permit the Asian versus Arab aura that appeared to be the gist of what the plaintiff was saying. [¶] "Mr. Hatai did not in his complaints, his formal complaints, F.E.H.A. or the complaint itself, allege what you are now suggesting should have been admitted into evidence. [¶] And there are limits to simply opening up the case in the areas which have never been pleaded or alleged or complained about to state authorities."

"As far as his credibility is concerned, there was clearly sufficient evidence for the jury to have found his testimony about the statements 'you Asian troublemaker,' and 'I'm firing you because you're Asian' to be lacking in credibility, and the court would agree with that. [¶] I think Mr. Hatai was sincere. I think he feels that he was profoundly mistreated in some way. It was very clear during the trial. But that feeling does not equate to admissible evidence on the issue. [¶] So the court's tentative will stand, and the motion is denied."

9

e. *Subsequent proceedings*.

Defendants filed memoranda of costs and Hatai filed motions to strike. The trial court awarded costs of $27,347.87 to Caltrans and $3,642.35 to Haddadeen.

Hatai filed a timely notice of appeal from the judgment.

## CONTENTIONS

Hatai contends: the trial court erred in excluding evidence of Haddadeen's discrimination against persons of non-Arab ancestry; the limitation on evidence also prevented Hatai from presenting a harassment case; he was prevented from presenting his retaliation case; he was improperly prevented from putting on his case with respect to failure to prevent harassment, discrimination and retaliation; the trial court erred in denying leave to amend; a new trial was warranted due to the erroneous exclusion of evidence and instructional error; and the trial court erred in awarding costs to the prevailing defendants.

## DISCUSSION

1. *No merit to claim of evidentiary error*.

The essence of Hatai's appeal is that he was in the class of non-Arabs subjected to discriminatory and harassing treatment by Haddadeen, but the trial court improperly prevented the introduction of such evidence. We reject Hatai's contention. On this record, the trial court acted well within the bounds of its discretion in excluding evidence relating to employees outside Hatai's protected class.

a. *"Me-too" in employment discrimination cases*.

*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740 (*Johnson*), considered "the admissibility of me-too evidence under [Evidence Code] section 1101, subdivision (b), in the analogous situation of a FEHA claim for pregnancy discrimination. Johnson claimed her employer fired her because she was pregnant. In opposing the defendant's motion for summary judgment, Johnson submitted evidence that defendant had fired other women because they were pregnant. The evidence was declarations of five former employees who claimed they were fired or otherwise discriminated against after telling the employer they were pregnant. The trial

10

court granted the motion. (*Johnson, supra,* 173 Cal.App.4th at pp. 744-745, 761-762.) On appeal, Johnson argued that the me-too evidence supported her contention that there were triable issues of fact. (*Id.* at p. 759.) The Court of Appeal agreed and reversed on this basis among others. (*Ibid.*) It rejected the defendant's contention that the declarations were inadmissible propensity evidence under *Beyda* [*v. City of Los Angeles* (1998) 65 Cal.App.4th 511]. (*Johnson, supra,* at p. 760.) Justice Croskey wrote: '*Beyda* did not address whether the evidence could be admitted under the provisions of subdivision (b) of Evidence Code section 1101.[2] As discussed below, many courts have held that evidence of the type sought to be introduced by the plaintiff in *Beyda*, and by the plaintiff in the instant case, is admissible under rule 404(b) of the Federal Rules of Evidence . . . to show intent or motive, for the purpose of casting doubt on an employer's stated reason for an adverse employment action, and thereby creating a triable issue of material fact as to whether the stated reason was merely a pretext and the actual reason was wrongful under employment law.' (*Johnson, supra,* 173 Cal.App.4th at p. 760.)" (*Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 112 (*Pantoja*).)

The "*Johnson* court concluded . . . the evidence of pregnancy discrimination against other employees 'sets out factual scenarios related by former employees of defendant that are sufficiently similar to the one presented by plaintiff concerning her own discharge by defendant' to be relevant under [Evidence Code] section 1101, subdivision (b). (*Johnson, supra,* 173 Cal.App.4th at p. 767.)" (*Pantoja, supra,* 198 Cal.App.4th at pp. 113-114.)

---

[2] Evidence Code section 1101 states at subdivision (b): "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

11

Similarly, in *Pantoja*, the issue was whether the trial court "erred in not allowing the jury to hear 'me too' evidence, that is, evidence of the employer's alleged gender bias in the form of harassing activity against women employees other than the plaintiff." (*Pantoja, supra,* 198 Cal.App.4th at p. 92.) *Pantoja* held "[t]he me-too evidence was relevant both to prove gender bias and to rebut the defense evidence that [the employer] had a policy of not tolerating harassment and a practice of not directing profanity at individuals. If, as the me-too evidence tended to show, [the employer] lacked this policy and practice when Pantoja was not present and during times when she was not an employee, the jury could rationally infer that he also lacked them when she was an employee and was present." (*Id.* at p. 116.)

      b. *Hatai's broad theory of admissibility is outside the parameters of the "me-too" doctrine*.

The instant case is far afield from *Johnson* or *Pantoja*. In *Johnson*, a woman who claimed her employer fired her because she was pregnant sought to present "me too" evidence the employer had fired *other women* because they were pregnant. In *Pantoja*, a hostile work environment sexual harassment case, the plaintiff sought to present evidence of the employer's alleged gender bias in the form of harassing activity *against female employees other than plaintiff*.

Here, Hatai alleged he is a person of "Asian or Japanese race or national origin or ancestry," and that he suffered discrimination, harassment and retaliation on the basis of his national origin and/or race. Thus, the "me-too" doctrine entitled Hatai to present evidence that *other employees at Caltrans of east Asian or Japanese descent* had been subjected to similar discrimination. However, given the nature of Hatai's lawsuit, the "me-too" doctrine did not entitle Hatai to present evidence of discrimination against employees *outside of Hatai's protected class* to show discrimination or harassment against Hatai.

Thus, the trial court properly exercised its discretion under Evidence Code section 352 to exclude the proffered evidence on the ground its probative value was outweighed by undue prejudice or the consumption of time that would have been taken up by the

12

issue. The trial court properly refused to entertain a series of mini-trials on issues of tangential relevance relating to employees outside Hatai's of protected class.

As the trial court noted, this was pled as an anti-Asian case, not as an Arab favoritism case. It was only on the eve of trial that Hatai sought to reframe his case to show that Haddadeen had discriminatory intent "against anyone who is not an Arab" -- lacking evidence of anti-Asian animus by Haddadeen, Hatai now sought to prove his case by showing Haddadeen's general xenophobia against non-Arabs.

Moreover, the trial court found, in denying the motion for new trial, that Hatai was not credible. The trial court, sitting as a "thirteenth juror" (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503), specifically found Hatai's "testimony about the statements 'you Asian troublemaker,' and 'I'm firing you because you're Asian' to be lacking in credibility." On this record, any evidentiary error, if it occurred, was harmless. There was no miscarriage of justice.

2. *No merit to Hatai's contention the trial court erred in denying leave to amend*.

Hatai contends the trial court erred in denying him leave to amend his complaint to plead pro-Arab favoritism by Haddadeen. However, the opening brief does not indicate whether Hatai even made a motion for leave to amend in the court below.

The record reflects that Hatai's opposition to a nonsuit motion by Caltrans, at footnote 2, stated *if* his "[retaliation] allegations are insufficient, HATAI requests leave to amend." This conditional request for leave to amend, which was buried in a footnote in Hatai's opposition to defendants' motion for nonsuit, was insufficient to present the issue below. Therefore, Hatai cannot contend on appeal that the trial court erred in denying his motion for leave to amend.

3. *No merit to claim of instructional error*.

Hatai contends that over his objections, the trial court instructed the jury Hatai's "national origin and/or race" were the basis of his FEHA claims.

The record reflects that Hatai's proposed instructions used the phrase "race, national origin and ancestry," Some of Hatai's proposed instructions also added the term "color."

13

Hatai has not shown that "ancestry" and "color" were not adequately subsumed within the terms "national origin and/or race."

4. *No error in award of costs to defendants as the prevailing parties*.

As indicated, the trial court awarded costs of $27,347.87 to Caltrans and $3,642.35 to Haddadeen. These were ordinary trial costs, not expert witness fees or attorney fees.

Hatai asked the trial court to strike the cost bills in their entirety because defendants had not shown that Hatai's lawsuit was frivolous, vexatious, or wholly without merit. The trial court declined to do so, pursuant to *Perez v. County of Santa Clara* (2003) 111 Cal.App.4th 671 (*Perez*).

The trial court's ruling was proper. As stated in *Perez, supra*, 111 Cal.App.4th at page 681, "*ordinary litigation costs are recoverable by a prevailing FEHA defendant even if the lawsuit was not frivolous, groundless, or unreasonable. . . .* Code of Civil Procedure section 1032, subdivision (b) provides for costs '*as a matter of right*' absent express statutory provision, and [Government Code] section 12965(b) specifically allows 'reasonable attorney's fees and costs' within the court's discretion. . . . We therefore disagree with the *Cummings* court's [(*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383)] extension of the *Christiansburg* [(*Christianburg Garment Co. v. EEOC* (1978) 434 U.S. 412)] standard for *attorney fees* to *ordinary litigation expenses* allowed by Code of Civil Procedure section 1033.5. A prevailing defendant should be able to recover these costs *even if the plaintiff did not bring a frivolous, groundless, or unreasonable lawsuit.*" (*Perez, supra*, 111 Cal.App.4th at p. 681, italics added; accord *Knight v. Hayward Unified School Dist*. (2005) 132 Cal.App.4th 121, 134-136; *Baker v. Mulholland Security & Patrol, Inc*. (2012) 204 Cal.App.4th 776, 783 [in FEHA actions "ordinary litigation costs . . . are routinely shifted under Code of Civil Procedure sections 1032 and 1033.5"].)

14

## DISPOSITION

The judgment is affirmed.  The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.

15